UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

THE ESTATE OF YARON UNGAR et al.

        Plaintiffs – Judgment Creditors,

Civil No: 07 CV 2572
(CM) (LMS)

-against-

**DECLARATION OF
AVRAHAM COLTHOF**

ORASCOM TELECOM HOLDING S.A.E.

        Defendant - Garnishee.
---------------------------------------------------------------X

AVRAHAM COLTHOF, of the City of Jerusalem, Israel, DECLARES PURSUANT TO 28 U.S.C. §1746, AS FOLLOWS:

1. I am a graduate of the Law Faculty of Bar Ilan University in Israel, a member of the Israeli Bar and practice law in Jerusalem, Israel.

2. I am fluent in Hebrew and English and I am capable of translating accurately between these languages.

3. I was retained by the family of Yaron Ungar, deceased, to locate records and documents, including court records, relating to assets of the Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO"). I have discovered, *inter alia*, the following:

4. Over the past few years several dozen civil suits have been filed against the PA and PLO in the Israeli courts by Israeli citizens harmed by terrorist attacks. In many of these cases, the plaintiffs sought and were granted a prejudgment attachment on the assets of the PA.

1

5.   One such suit is <u>Alex Weintraub et al. v. The Palestinian Authority et al.</u>, which was brought in the Tel Aviv District Court in 2004 by the family of a woman killed in a terrorist attack on June 28, 2001.

6.   On July 13, 2004, the Tel Aviv court granted the <u>Weintraub</u> plaintiffs' *ex parte* motion for a prejudgment attachment on the assets of the PA.

7.   On July 25, 2004, the PA filed a "Motion to Vacate Temporary Attachment (Granted Ex Parte)" in <u>Weintraub</u> (hereinafter: "PA Motion to Vacate"), a copy of which is in my possession.

8.   The PA Motion to Vacate (which is ten pages in length and of course in Hebrew) sought to vacate the *ex parte* prejudgment attachment on the assets of the PA entered on July 13, 2004, or in the alternative to reduce the amount of the attachment to 3 million New Israeli Shekels (NIS).

9.   Under Israeli law, a plaintiff seeking a prejudgment attachment must show both (i) a strong chance of success on the merits and (ii) that absent a prejudgment attachment enforcement of any eventual judgment will be difficult. This latter requirement is generally referred to in Israeli jurisprudence as the "element of difficulty".

10.  The PA Motion to Vacate asserted that the "element of difficulty" was not present, and that there was no "fear of the existence of a difficulty in satisfying the judgment if and when received by the respondents," because:

> [T]he Palestinian Authority has investments worth at least 600 million dollars in various companies, including the Algerian, Jordanian and Tunisian communication companies, the Palestinian cement company, as well as hotels, banks, airlines, real estate ventures and the like.

PA Motion to Vacate, Section E, §§ 33, 36.

11.　The PA Motion to Vacate further argued in this vein that, "it has not been claimed at all that the movants have failed to honor judgments against them and that it will not be possible to satisfy the judgment in this way ... the respondents . . . fail to note the simple possibility – [that] the movants will pay the judgment!" Id. at §§ 45-46.

12.　In support of the PA's claim that the "element of difficulty" was not present because the PA would honor any judgment rendered in favor of the Weintraubs and has more than adequate assets to pay such a judgment, the PA submitted along with its Motion to Vacate a sworn Affidavit from Nadim Al-Barahama, the legal advisor for the PA's "Office of Finance" (hereinafter: "Al-Barahama Affidavit").

13.　The Al-Barahama Affidavit is written in Hebrew. Attached to the Al-Barahama Affidavit submitted by the PA was a three-page English-language document bearing the following caption:

**APPENDIX C**



**FULL LISTING OF ASSETS**

14.　This English-language document is referred to in §5 of the Al-Barahama Affidavit as "the appendix to the report by the Standard and Poors company regarding <u>assets of the Authority</u>..." (emphasis added) and is designated as Appendix A to the Al-Barahama

3

Affidavit.[1]

15.  A true photocopy of the original Hebrew-language Al-Barahama Affidavit (including the English-language "Appendix A" thereto) is attached to the instant Declaration and marked as Exhibit 1 hereto.

16.  An English translation of the original Hebrew-language Al-Barahama Affidavit is attached to the instant Declaration and marked as Exhibit 2 hereto. I certify that this translation is true and accurate.

17.  To date I have identified four other civil suits in the Israeli courts in which the PA has moved to contest prejudgment attachments on its assets, in each of which the PA submitted affidavits virtually identical to the Al-Barahama Affidavit (along with the Standard and Poors appendix) and asserted that no prejudgment attachment was necessary because the PA assets listed in the Standard and Poors appendix are sufficient to pay any future judgments.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

August 15, 2007

_____
AVRAHAM COLTHOF

---

[1] I am informed that counsel for Orascom Telecom Holding has previously questioned why the Appendix bears the caption "Appendix C" if it is designated as Appendix A to the Al-Barahama Affidavit. The answer is simple: the caption "Appendix C" is clearly part of the original document, which means that this document served as "Appendix C" to some other document. This is also obvious from the fact that it bears page numbers 342-344. The PA obviously deemed this document as "Appendix A" because it is the sole appendix to the Al-Barahama Affidavit.

# EXHIBIT 1

# תצהיר

אני החי"מ נדים אל - בראהמה, ת.ז. מסי 410021869 לאחר שהוזהרתי כי עלי להצהיר את האמת, וכי אם לא אעשה כן, אהיה צפוי לעונשים הקבועים בחוק, מצהיר בזאת כדלקמן:

1. אני משמש כיועץ משפטי למשרד האוצר הפלסטיני, ועושה תצהירי זה בתמיכה לבקשת הרשות הפלסטינית לבטל את צו העיקול שהוטל על נכסיה.

2. על פי עצה משפטית שקיבלתי, הבקשה אינה נתמכת בתצהיר ודינה להדחות.

3. על פי ההסכמים בין הרשות ומדינת ישראל, קיים תזרים מזומנים שוטף בין מדינת ישראל ובין הרשות הפלסטינית, כשלידי מדינת ישראל מגיעים באופן קבוע, מדי חודש, סכומי כסף ניכרים, אותם חיא אמורה להעביר לידי הרשות הפלסטינית כל חודש.

4. מדי חודש מגיעים לידי מדינת ישראל סכומים שנעים בין כ- 140 מיליון ש״ח ובין כ- 200 מיליון ש״ח בחודש או יותר. מדובר בכספי מסים שהיא גובה עבור הפלסטינים.

5. כמו כן, לרשות הפלסטינית השקעות בשווי של לפחות 600 מיליון דולר בחברות שונות, ביניהן חברות התקשורת האלג׳יראית, הירדנית והתוניסאית, חברת המלט הפלסטינית ואף בתי מלון, בנקים, חברות תעופה, עסקי נדל״ן וכיו״ב.

העתק מנספח דו״ח חברת סטנדרט אנד פורס בעניין נכסי הרשות מצ״ב **כנספח א׳** כחלק בלתי נפרד מתצהירי.

6. כפי שעולה מן הנספח לדו״ח, הרשות הפלסטינית היא בעלת נכסים רבים, בשווי העולה עשרות מונים על סכום התביעה ושל תביעות נוספות שהוגשו כלפי הרשות. לא קיים חשש כי הרשות תפעל ל״הברחת״ כספים אלו, רק על מנת להמנע מתשלום חוב - אם ייפסק נגדה.

7. הטלת העיקול תגרום נזק לרשות שכן עיקולים אלו מונעים העברת כספים, גם למשכורות וגם לגופים אחרים שהרשות מתקשרת איתם. זאת בנוסף לפגיעה בכבוד ובתדמית של הרשות הפלסטינית הן כלפי העם הפלסטיני והן כלפי מדינות ומוסדות מחוץ לארץ.

8. הטלת העיקולים בסכומים משמעותיים משבשת לחלוטין את הכלכלה הפלסטינית, פוגעת קשות בתקציב של הרשות, מעכבת תשלומי משכורות במועדן וגורמת להפרת התחייבויות הרשות כלפי צדדים שלישיים.

doc.76-1
.ג.

9. על פי עצה משפטית שקיבלתי, גם אם תדחנה הטענות המקדמיות של הרשות ותקבע אחריותה - דבר המוכחש כשלעצמו - אין כל הצדקה להטלת עיקול בסכומים חסרי כל יסוד מבחינה משפטית. מעולם לא ניתן פסק דין בבתי משפט בישראל שמחייב תשלום פיצוי בסכומים מוגזמים כאלה והדבר זועק לשמים ומהווה שימוש לרעה במערכת השיפוטית.

10. זה שמי זו חתימתי ותוכן תצהירי לעיל אמת, לאחר שהוקרא בפני ותורגם לערבית.



המצהיר

בפני עו"ד _____ א. סלם _____ הופיע ביום _07.04__ מר נדים אל - בראהמה, אשר זיהיתיו לפי ת.ז. מס' 410021869 ולאחר שהזהרתיו כי עליו לומר את האמת, וכי אם לא יעשה כן, יהיה צפוי לעונשים הקבועים בחוק, אישר את נכונות הצהרתו וחתם עליה בפני.

אני מצהיר כי אני שולט בשפה הערבית, שפתו של המצהיר, ובעברית, ואני תרגמתי למצהיר את התצהיר, ולאחר שהמצהיר הבין את האמור בתצהיר, חתם בפני.

עו"ד אוסאמה סעדי
מ.ר. 13423

א. סלם, עו"ד

## APPENDIX C



## FULL LISTING OF ASSETS

| Entity | Value | Ownership Interest |
|---|---|---|
| **Cash**[1] | $ 73,982,370 | |
| **Companies Evaluated by Standard & Poor's**[2] | | |
| | | 23.63% |
| Orascom Telecom Algeria (via its 54.711% interest in Oratel) | 90,000,000 | |
| Jordan Mobile Telecommunications Company, Ltd. ("JMTS" or "Fastlink") | 66,110,000 | 14.29% |
| Cement Company | 54,000,000 | 100.00% |
| Orascom Telecom Tunisia (via its 44.05% interest in Orascom Tunisia Holding and Carthage Consortium) | 50,000,000 | 20.00% |
| Palestine Cellular Communications Company, Ltd. ("PALCEL") | 36,920,000 | 35.00% |
| Cap Holdings Oasis Hotel Casino Resort ("Oasis") | 28,510,000 | 23.08% |
| Orascom Telecom ("OT") | 25,240,000 | 11 million shares |
| Palestine Telecommunications Company, PLC ("PALTEL") | 13,600,000 | 6.75% |
| Bioniche Life Sciences Inc. ("Bioniche") | 7,100,000 | 14.29% |
| Gaza Ahliea Insurance Company ("GAIC") | 1,570,000 | 23.63% |
| **Companies Under Evaluation Process by Standard & Poor's**[3] | | |
| Gas Project (BG) | 57,000,000 | 22.50% |
| Aviation Project | 19,000,000 | 80% |
| Various Real Estate | 15,000,000 | 100% |
| APIC | 9,000,000 | 20% |
| PADICO | 8,500,000 | 7% |
| Delma | 8,300,000 | NA |
| Internet Egypt | 7,500,000 | 15% |
| Venture Capital Investments | 7,000,000 | NA |
| Chalcedony LLC | 5,300,000 | NA |
| Peace Technology Fund | 4,000,000 | 34% |
| Palestinian Electricity Co. | 3,200,000 | 6% |
| Qaser Jaser Hotel | 3,300,000 | 21% |
| United for Storage & Refrigeration | 3,000,000 | 80% |
| Hanadi Tower Project | 3,800,000 | 100% |
| Tri Fitness | 3,000,000 | NA |
| Palestinian Flour Mills Company | 2,800,000 | 47% |
| Canaan Equity III | 2,800,000 | NA |
| Al-Yazgi Group for Soft Drinks (Pepsi) | 2,700,000 | 49% |
| Palestinian Investment Bank | 2,600,000 | 8% |
| Evergreen III L.P. | 2,200,000 | 5.5% |
| Coca Cola | 1,500,000 | 15% |
| Bethlehem Convention Center | 1,900,000 | 45% |
| Korea Fund | 1,900,000 | NA |
| Canaan Equity II | 1,800,000 | NA |
| Jerusalem Housing Project | 1,700,000 | 50% |
| Al-Ahlia AlAqariah | 1,400,000 | 50% |

# APPENDIX C



| Entity | Value | Ownership Interest |
|---|---|---|
| **Companies under evaluation by Standard & Poor's**[3] (Continued) | | |
| AVMAX Aircraft Management | $ 1,250,000 | 12.50% |
| The Onyx Fund LLC | 1,100,000 | NA |
| National Aluminum & Profile Co. | 900,000 | 20% |
| Steel Company | 900,000 | 15% |
| Grand Park Hotel | 400,000 | 26% |
| Al-Moutakhasesa Investment | 800,000 | 6.67% |
| Vegetable Oil Co. | 900,000 | 7% |
| College & School | 600,000 | 100% |
| Al-Salaam International Co. | 500,000 | 5% |
| Arab Palestinian Marketing Centers | 400,000 | 9% |
| Al-Marie Company | 300,000 | 33% |
| Al-Sharq Company (Al-Waha) | 300,000 | NA |
| Al-Ahlia Industrial Co. | 300,000 | 15% |
| Jordanian Specialized Co. | 200,000 | 3.75% |
| Al-Tekanion Engineering Co. | 200,000 | 30% |
| Silver Haze Partners, LP | 200,000 | NA |
| Palestinian Imports Egyptian Prods. | 100,000 | 65% |
| Belgium Company | 100,000 | 30% |
| 1st Option Management | 10,000 | 30% |
| The Middle East Pipe Factory | 0[4] | 100% |
| Petroleum Authority | 0[4] | 100% |
| Electricity Monitoring Distribution Company | 0[4] | NA |
| Al-Bahar Company | 0[4] | NA |
| Mortgage Company | 0[4] | NA |
| Tobacco Authority | 0[4] | 100% |
| Palestine Development Company (Italy – Palestine) | 0[4] | NA |
| Al-Sakhra Company | 0[4] | NA |
| **Companies that have ceased operation**[5] | | |
| Golden Gate Project (Jerusalem) | 0 | NA |
| Bazar Project (Jerusalem) | 0 | 100% |
| Gaza Juice Factory | 0 | 100% |
| Al-Borhan Company | 0 | 51% |
| Palestinian Cigarettes Co. | 0 | 50% |
| Ampal Company Gaza | 0 | 49% |
| Ethar Print Shop Company | 0 | 66.7% |
| Al-Saker Securities Company | 0 | 60% |
| Palestinian Tunisian Company | 0 | 100% |
| Green Jericho Company | 0 | 40% |
| Glass Company | 0 | 40% |
| Qubaa Al-Watan Company | 0 | 35% |
| National Cement Manufacturing Co. | 0 | 50% |
| West Bank & Gaza Fund. | 0 | 3% |
| Logo Company | 0 | 28% |

## APPENDIX C



### Footnotes to Appendix C:

(1) See supporting detail of bank statement of accounts on following page.

(2) Value (in US dollars) based on Standard & Poor's valuation.

(3) Rough estimate of value (in US dollars) from PIF management for the purpose of this disclosure.

(4) Companies and Investments for which no current estimate of value is available.

(5) Companies that have ceased operation as of January 1st, 2003. PIF expects these companies to have minimal or no positive values.

# EXHIBIT 2

# AFFIDAVIT

I the undersigned <u>Nadim Al-Barahama</u> I.D. No. <u>410021869</u> after having been warned to declare the truth, and that if I do not do so I will be liable for the penalties provided by law, hereby declare as follows:

1. I serve as legal counsel for the Palestinian Office of Finance, and make this affidavit in support of the motion of the Palestinian Authority to vacate the order of attachment that was entered against its property.

2. According to legal advice that I have received, the motion[1] is not supported by an affidavit and should be denied.

3. Pursuant to the agreements between the Authority and the State of Israel, there is a current cash flow between the State of Israel and the Palestinian Authority, such that the State of Israel receives on a regular basis, each month, significant sums of money, which it is supposed to transfer each month to the Palestinian Authority.

4. Each month the State of Israel receives sums ranging from approximately 140 million NIS to approximately 200 million NIS per month or more. These are tax funds that it collects for the Palestinians.

5. Likewise, the Palestinian Authority has investments worth at least 600 million dollars in various companies, including the Algerian, Jordanian and Tunisian communication companies, the Palestinian cement company, as well as hotels, banks, airlines, real estate ventures and the like.

    A copy of the appendix to the report by the Standard and Poors company regarding assets of the Authority is attached hereto as **Appendix A** as an inseparable part of my affidavit.

6. As indicated by the appendix to the report, the Palestinian Authority owns many assets, the value of which is many times greater than the amount of the suit and of other suits filed against the Authority. There is no fear that the Authority will act to "illegitimately transfer" these funds merely in order to avoid paying a debt – if one is entered against it.

7. Entering the attachment will cause harm to the Authority since these attachments prevent the transfer of funds, both for salaries and to other entities with which the Authority transacts. This is in addition to the injury to the honor and image of the Palestinian Authority both vis-à-vis the Palestinian people and vis-à-vis foreign nations and institutions.

---

[1] Apparently referring to the motion for the attachment – *translator*.

8. Entry of attachments in significant amounts completely disrupts the Palestinian economy, severely harms the Authority's budget, delays timely payment of salaries and causes a breach of the Authority's obligations toward third parties.

9. According to legal advice that I have received, even if the Authority's preliminary arguments are rejected and its liability – which is disputed -- is established, there is no justification at all for entering an attachment in amounts which lack any foundation from a legal perspective. There has never been a judgment given in the Israeli courts that required payment of compensation in these exaggerated amounts and this matter cries out to the heavens and constitutes an abuse of the judicial system.

10. This is my name and that is my signature and the content of my affidavit above is true, after it was read to me and translated into Arabic.

_____/S/_____
The affiant

Before me, attorney O. Saadi, appeared on the date 7.20.04 Mr. Nadim Al-Barahama whom I identified by I.D. No. 410021869, and after I warned him that he is required to state the truth, and that if he does not do so he will be liable for the penalties provided by law, affirmed the accuracy of his affidavit and signed it before me.

I declare that I am fluent in the Arabic language, the language of the affiant, and in Hebrew, and I translated the affidavit for the affiant, and after the affiant understood what is stated in the affidavit, he signed it before me.

Osama Saadi, Esq.
Lic. No. 13423

_____/S/_____
O. Saadi, Esq.