UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

THE ESTATE OF YARON UNGAR by and through its Administrator, DAVID STRACHMAN; DVIR UNGAR, minor, by his guardians and next friends, YISHAI UNGAR, minor, by his guardians and next friends, PROFESSOR MEIR UNGAR, JUDITH UNGAR, individually and in their capacity as legal guardians of Plaintiffs DVIR UNGAR and YISHAI UNGAR; RABBI URI DASBERG, and JUDITH DASBERG, in their capacity as legal guardians of Plaintiffs DVIR UNGAR and YISHAI UNGAR; AMICHAI UNGAR; DAFNA UNGAR; and MICHAL COHEN,

Civil Action No. 07 CV 2572 (CM) (LMS)

**SUPPLEMENTAL DECLARATION OF ROBERT J. TOLCHIN, ESQ.**

Plaintiffs / Judgment-Creditors,

-against-

ORASCOM TELECOM HOLDING S.A.E.

Defendant / Garnishee.

------------------------------------------------------------------- X

**ROBERT J. TOLCHIN**, pursuant to 28 U.S.C. § 1746, declares and states as follows subject to the penalties for perjury of the United States of America:

1. I am an attorney licensed to practice law in the State of New York, and am a member of the Bar of this Court. I am one of the attorneys representing the plaintiffs herein, and am making this declaration in order to convey to the court the following additional exhibits which are submitted by the plaintiffs in opposition to the defendant's motion to dismiss.

2.     These exhibits were inadvertently omitted from my previous (August 15) declaration conveying exhibits, which I noticed upon reviewing the docket.

Exhibit 59  -  Orascom Telecom Reply Memorandum in Support of its Motion to Quash Non-Party Subpoenas, dated September 26, 2005

Exhibit 60  -  Deposit Agreement between Orascom and Depository Trust Company

Exhibit 61  -  Share Purchase Agreement between PIF and Orascom

Exhibit 62  -  Letter from Orascom CEO Naguib Sawiris to Dr. Mohamed Mustafa, CEO of the PIF, dated May 28, 2006

Exhibit 63  -  Letter from Orascom Vice President for Legal Affairs Amr El-Bayoumi to Dr. Mohamed Mustafa, CEO of the PIF, dated May 28, 2006

Exhibit 64  -  Letter from Orascom Vice President for Legal Affairs Amr El-Bayoumi to Dr. Mohamed Mustafa, CEO of the PIF, dated June 12, 2006

Dated: New York, New York
        August 16, 2007

_____
ROBERT J. TOLCHIN

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

The Estate of Yaron Ungar, et al.,                    )
                                                                            )
                                                                            )
                           Plaintiffs,                              )          Case No. 18 MS 0302
                                                                            )
                 - against -                                         )
                                                                            )
The Palestinian Authority, et al.,                    )
                                                                            )
                           Defendants.                            )
                                                                            )

## ORASCOM TELECOM'S REPLY
## IN SUPPORT OF ITS MOTION TO QUASH NONPARTY SUBPOENAS

**WHITE & CASELLP**

701 Thirteenth Street, N.W.
Washington, D.C. 20005

*Attorneys for Orascom Telecom*
*Holding S.A.E.*

September 26, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................... ii

I.    ORASCOM TELECOM HAS STANDING ...................................................................... 1

II.   PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY ................. 2

III.  THE UNITED STATES AS A WHOLE IS NOT THE RELEVANT FORUM ................. 8

IV.   THE SUBPOENAS ISSUED TO ORASCOM TELECOM AND ITS
      REPRESENTATIVES ARE OTHERWISE DEFECTIVE .................................................. 9

V.    THE COURT LACKS JURISDICTION OVER THE PROPERTY
      IN QUESTION ................................................................................................................ 10

CONCLUSION ........................................................................................................................... 10

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                     **PAGE(S)**

*Benson & Assoc., Inc. v. Orthopedic Network of New Jersey*,
No. 98 Civ. 1020, 1998 WL 388531 (S.D.N.Y. July 13, 1998) ...........................................7

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
206 F.R.D. 78 (S.D.N.Y. 2002) .......................................................................................2

*Chazin v. Lieberman*, 129 F.R.D. 97 (S.D.N.Y. 1990)........................................................2

*Cootes Drive LLC v. Internet Law Library, Inc.*, No. 01 Civ. 0877,
2002 WL 424647 (S.D.N.Y. Mar. 19, 2002) ........................................................................2

*Epperson v. Entm't Express, Inc.*, 242 F.3d 100 (2d Cir. 2001)........................................8

*Gal Aviv Ltd. USA v. Algat Aluminum Finishing Processes*,
No. 92 Civ. 9409, 1994 WL 150838 (S.D.N.Y. Apr. 18, 1994).....................................6-7

*Golden Gulf Corp. v. Jordache Enters. Inc.*, No. 91 Civ. 8506,
1994 WL 62384 (S.D.N.Y. Feb. 24, 1994)...........................................................................7

*Haworth, Inc. v. Herman Miller, Inc.*, No. 92 C 4870, 1992 WL 229399
(N.D. Ill. Aug. 10, 1992)...................................................................................................3

*HBE Leasing Corp. v. Frank*, 882 F. Supp. 60 (S.D.N.Y. 1995) ...................................8-9

*H.C. Cook Co. v. Beecher*, 217 U.S. 497, 30 S. Ct. 601 (1910) .......................................8

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408,
104 S. Ct. 1868 (1984).....................................................................................................6,7

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694, 102 S. Ct. 2099 (1982).................................................................................2

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998)...........................................3,5,7

*Jerge v. Potter*, No. 99-CV-0312E(F), 2000 WL 1160459
(W.D.N.Y. Aug. 11, 2000)....................................................................................................5

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
918 F.2d 1039 (2d Cir. 1990)..............................................................................................6

*Manway Constr. Co. v. Housing Auth.*, 711 F.2d 501
(2d Cir. 1983).....................................................................................................................9

*Nat'l Westminster Bank v. Cheng*, 751 F. Supp. 1158
(S.D.N.Y. 1990).................................................................................................................9

*Nordic Bank PLC v. Trend Group, Ltd.*, 619 F. Supp. 542
(S.D.N.Y. 1985)..........................................................................................................................6

*Palmieri v. Estafan*, 793 F. Supp. 1182 (S.D.N.Y. 1992)................................................................5

*Peacock v. Thomas*, 516 U.S. 349, 116 S. Ct. 862 (1996)...............................................................8

*Philip Morris Inc. v. Otamedia*, No. 02 Civ. 7575,
2004 WL 1348987 (S.D.N.Y. June 15, 2004) ......................................................................3

*Pomazi v. Health Indus. of America, Inc.*, 869 F. Supp. 102
(D. Conn. 1994) .....................................................................................................................3

*Smit v. Isiklar Holding A.S.*, 354 F. Supp. 2d 260 (S.D.N.Y. 2005)............................................ 3-4

*Steego Corp. v. Ravenal*, 830 F. Supp. 42 (D. Mass. 1993) ............................................................7

*Syposs v. United States*, 181 F.R.D. 224 (W.D.N.Y. 1998) ............................................................2

*United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610
(1st Cir. 2001)........................................................................................................................7

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
751 F.2d 117 (2d Cir. 1984)...................................................................................................5

*Weiss v. La Suisse*, 69 F. Supp. 2d 449 (S.D.N.Y. 1999) ...............................................................5

*Williams v. Pfeffer*, 117 F. Supp. 2d 331 (S.D.N.Y. 2000)..............................................................9

**STATE CASES**

*Robbins v. Ring*, 9 Misc. 2d 44, 166 N.Y.S.2d 483
(N.Y. Sup. Ct. 1957).............................................................................................................6

**FEDERAL STATUTES**

Federal Rules of Civil Procedure, Rule 12(b).................................................................................3

Federal Rules of Civil Procedure, Rule 45 ............................................................................. 2,9-10

**STATE STATUTES**

N.Y. C.P.L.R. §§ 5225 and 5227 (McKinney 1997) .....................................................................10

Plaintiffs admit they are currently engaging in far-reaching discovery of Orascom Telecom's purported jurisdictional contacts with the United States (Opp'n at 2) *before* this Court has ruled on whether Plaintiffs are entitled to such discovery. As Orascom Telecom has argued, Plaintiffs are not entitled to jurisdictional discovery of Orascom Telecom because they have failed to make a prima facie showing of personal jurisdiction. Moreover, Orascom Telecom has raised threshold objections in this Miscellaneous action — including objections as to subject-matter jurisdiction — that this Court must resolve before Plaintiffs should be entitled to *any* jurisdictional discovery of Orascom Telecom.

## I.    ORASCOM TELECOM HAS STANDING

Contrary to Plaintiffs' assertion (Opp'n at 1), Orascom Telecom separately identified three categories of Plaintiffs' nonparty subpoenas that seek information about Orascom Telecom (Mem. at 1 & Exs. A-C).[1] Each of Plaintiffs' known subpoenas seeks jurisdictional discovery of Orascom Telecom. *See* Mem. Ex. A (¶¶ 15-22, 25 of each subpoena); Ex. B (DRG & Tyco Subpoenas ¶¶ 14-21; Contrack Subpoena ¶¶ 11-18; BNY Subpoena at 1); Ex. C (¶¶ 11-18).

Because these subpoenas implicate Orascom Telecom's jurisdictional discovery challenge — which was pending when many of the subpoenas were issued — and because many of these subpoenas contain an unreasonable time for compliance, Orascom Telecom challenged all of the subpoenas together in a single motion on an expedited basis. (Plaintiffs provided Orascom Telecom with copies of the second Orascom Telecom subpoena and the El Gammal and Khaliq subpoenas just *three* business days before the return date on those subpoenas.)

---

[1] The subpoena issued to Mr. Zouhair Khaliq (Mem. Ex. A-5) was inadvertently categorized with Plaintiffs' subpoenas issued to Orascom Telecom and its representatives. Mr. Khaliq is *not* a representative of Orascom Telecom, but rather is the CEO of Mobilink, a subsidiary of Orascom Telecom. Orascom Telecom objects to the Khaliq subpoena on the same grounds that it objects to the other third-party subpoenas seeking information about Orascom Telecom.

While Orascom Telecom is not a party to this Miscellaneous action, it is a party to Plaintiffs' state and recently filed federal enforcement proceedings, and as such, would receive notice of their third-party subpoenas. Notwithstanding Plaintiffs' misreading of Rule 45 (*id.*), parties are entitled to notice of a Rule 45 subpoena prior to its issuance. *See Cootes Drive LLC v. Internet Law Library, Inc.*, No. 01 Civ. 0877, 2002 WL 424647, at *1 (S.D.N.Y. Mar. 19, 2002) (holding Rule 45 mandates that notice be given "prior to the issuance of the subpoena"). Plaintiffs' attempt to exploit the peculiar procedural posture of this Miscellaneous action to challenge Orascom Telecom's standing (Opp'n at 25) fails. Orascom Telecom has standing — even as a nonparty — to object to subpoenas infringing on Orascom Telecom's personal rights or privileges, including the defense of personal jurisdiction. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03, 102 S. Ct. 2099 (1982) ("The personal jurisdiction requirement recognizes and protects an individual liberty interest."); *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990) (holding party may object to nonparty subpoena when party "claims some personal right or privilege"); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 93 (S.D.N.Y. 2002) (holding nonparty Native American Tribe had standing to object to subpoena of tribal bank records); *accord Syposs v. United States*, 181 F.R.D. 224, 226-27 (W.D.N.Y. 1998).

## II. PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY

### A. Plaintiffs' Request For A Stay Is Premature

Plaintiffs' request for a stay (Opp'n at 3-7) inexplicably presumes that there has been a ruling by this Court that Plaintiffs are entitled to jurisdictional discovery of Orascom Telecom. *No such ruling has been made.* Before Plaintiffs can even engage in such discovery, through third parties or otherwise, the Court must resolve Orascom Telecom's other threshold challenges — in particular as to this Court's subject-matter jurisdiction. Moreover, any jurisdictional

2

discovery of Orascom Telecom should be obtained from Orascom Telecom in the first instance so as not to unduly burden additional third parties. *See Haworth, Inc. v. Herman Miller, Inc.*, No. 92 C 4870, 1992 WL 229399, at *2 (N.D. Ill. Aug. 10, 1992) ("Non-party witnesses should not be burdened with producing documents sought by a party in an underlying litigation unless the party is unable to obtain that information from its adversary.").

## B.    The Abaza Declarations May Be Credited

Further, Plaintiffs' assertion that the Court must disregard the Abaza declarations (Opp'n at 11) is unfounded. Courts can consider defendants' affidavits or declarations in the context of a motion to quash, even pre-discovery. *See Philip Morris Inc. v. Otamedia*, No. 02 Civ. 7575, 2004 WL 1348987, *2 (S.D.N.Y. June 15, 2004) (upon consideration of defendants' briefs, supporting documents, and declaration, holding subpoena should be quashed because personal jurisdiction was lacking). Plaintiffs' own authority (Opp'n at 11) agrees. *See Pomazi v. Health Indus. of America, Inc.*, 869 F. Supp. 102, 105 (D. Conn. 1994) (considering defendant's affidavit in determining lack of personal jurisdiction). Plaintiffs' other cases (Opp'n at 10-11) are inapposite as they were brought in the context of Rule 12(b) and did not hold that courts should set aside defendants' declarations.

## C.    Plaintiffs Have Not Made a Prima Facie Showing of Personal Jurisdiction

Plaintiffs' jurisdictional allegations (Opp'n at 3, 12-20) are insufficient to make a prima facie showing of personal jurisdiction over Orascom Telecom, an Egyptian telecommunications holding company with foreign affiliates operating in markets in Africa, the Middle East, and South Asia. *See Jazini*, 148 F.3d at 184 (requiring legally sufficient allegations of jurisdiction, made in good faith, prior to discovery); *Smit v. Isiklar Holding A.S.*, 354 F. Supp. 2d 260, 263-64 (S.D.N.Y. 2005) ("[A] court will not draw argumentative inferences in favor of a plaintiff who

3

has failed to allege even bare facts to support a finding of personal jurisdiction over defendants.").

In the face of the rigorous legal requirements for general personal jurisdiction, coupled with Orascom Telecom's evidence of its lack of contacts with the State of New York and the United States, it is unclear how Plaintiffs, in good faith, can continue to stand by their unauthenticated and imprecise allegations culled from the Internet, particularly when their own exhibits suggest that the purported contacts concerned operations entirely outside the United States and, in some instances, did not even involve Orascom Telecom. *See* Opp'n Ex. P (Motorola contract with OTI for work in Iraq); Opp'n Ex. T (Tyco contract to develop network between Pakistan and the UAE); Opp'n Ex. U (roaming agreements with Orascom Telecom Tunisia).

As a preliminary matter, Plaintiffs' allegations regarding Orascom Telecom's purported contacts with the Overseas Private Investment Corporation, Tellabs, G.M. Selby, and the U.S. Export-Import Bank (Opp'n at 17-19) easily fail because no contracts exist between Orascom Telecom or even any affiliate or subsidiary of Orascom Telecom and these entities. *See* Second Supp. Abaza Decl. ¶¶ 4, 10, 12 (attached hereto as Ex. A). The remainder of Plaintiffs' allegations fit into five categories, which are independently and collectively insufficient to make out a prima facie showing of personal jurisdiction.

*First*, and constituting the bulk of Plaintiffs' jurisdictional allegations, the allegations based on Orascom Telecom's purported roaming agreements and contracts with Motorola Credit Corporation, the David Ross Group, Tyco, LCC, Tekelec (Opp'n at 17-18), and Microsoft (Opp'n at 3), are wholly insufficient, because they concern contracts of Orascom Telecom's non-

4

U.S. affiliates executed and relating to operations outside the United States. *See* Second Supp. Abaza Decl. ¶¶ 4, 6-9, 11, 14.

Plaintiffs cannot rely on the contacts of Orascom Telecom's foreign affiliates because they have not shown that these affiliates are "mere departments" of Orascom Telecom. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-122 (2d Cir. 1984) (articulating four-factor test for "mere departments"). Plaintiffs' reliance on an informal statement by Orascom Telecom's Chairman regarding the purported centralization of procurement (Opp'n at 3 n.3 & Ex. K) is insufficient to support an allegation that Orascom Telecom's numerous foreign affiliates are all "mere departments." To begin, the comment on procurement is within the context of a discussion of operations in Iraq.

More importantly, the statement is insufficient to confer personal jurisdiction as a matter of law. *See Jazini*, 148 F.3d at 185 (holding statement in annual report by company president requesting that "'each part of [] global operations . . . focus on contributing to the company as a whole,'" did not show requisite "pervasive control over the [U.S.] subsidiary"); *Palmieri v. Estafan*, 793 F. Supp. 1182, 1188-89 (S.D.N.Y. 1992) (holding U.S. affiliates were not "mere departments" despite common ownership and even though parent approved major financial decisions, reviewed budgets, and guaranteed financial obligations); *accord Weiss v. La Suisse*, 69 F. Supp. 2d 449, 457-58 (S.D.N.Y. 1999); *Jerge v. Potter*, No. 99-CV-0312, 2000 WL 1160459, *3-4 (W.D.N.Y. Aug. 11, 2000). In contrast to the above cases, Orascom Telecom does not even have any U.S. subsidiaries. *See* Consol. Reply Ex. 8 (Abaza Decl.) ¶ 10.

*Second*, Plaintiffs' allegations based on Orascom Telecom's purported contracts with U.S. banks for loan financing (Opp'n at 13-14), with Motorola (Opp'n at 17), and with Marconi (Opp'n at 17-18), are also insufficient because such contracts were made with non-U.S. affiliates

5

of U.S. companies, executed and relating to operations of Orascom Telecom outside the United States. *See* Second Supp. Abaza Decl. ¶¶ 3-5. These types of purchases and relationships — even with U.S. companies — are insufficient to confer personal jurisdiction. *See Helicopteros*, 466 U.S. at 418 (holding "mere purchases," even if occurring regularly, insufficient). Further, Plaintiffs' allegations based on a share purchase from Motorola (Opp'n at 19) are insufficient as the purchase involved shares issued and held outside the United States in a non-U.S. company operating overseas. *See* Second Supp. Abaza Decl. ¶ 13.

*Third*, Plaintiffs' allegations (Opp'n at 12-13) regarding Orascom Telecom's agreement with the Bank of New York to permit the private placement of Orascom Telecom's Global Depository Receipts, which are traded on the London Stock Exchange (Second Supp. Abaza Decl. ¶ 2), do not support general personal jurisdiction. *See Nordic Bank Plc v. Trend Group, Ltd.*, 619 F. Supp. 542, 565-66 (S.D.N.Y. 1985) (holding defendant banks' marketing of $100 million in commercial paper through New York brokerage firms insufficient); *Robbins v. Ring*, 9 Misc. 2d 44, 45, 166 N.Y.S.2d 483, 484-85 (N.Y. Sup. Ct. 1957) (holding private placement or sale of convertible notes, among numerous other factors, insufficient).

*Fourth*, Plaintiffs' allegations based on presentations and purported attendance at conferences and meetings in the United States (Opp'n at 14-16) are also insufficient, particularly where such attendance was not in furtherance of any existing contracts. *See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1045 (2d Cir. 1990) (holding 13 business trips insufficient where "business trips were of short duration, were by different employees, involved a number of accounts, including large multi-national corporations headquarted in New York, and in some instances concerned contacts that were not related to New York in any way"); *see also Gal Aviv Ltd. USA v. Algat Aluminum Finishing Processes*, No. 92 Civ. 9409, 1994 WL

6

150838 (S.D.N.Y. Apr. 18, 1994) (finding even "[i]n the light most favorable to plaintiff," five trips to solicit business, including attendance at a trade show, and the use of agents and a warehouse in New York, were insufficient); *accord Benson & Assoc., Inc. v. Orthopedic Network of New Jersey*, No. 98 Civ. 1020, 1998 WL 388531, at \*3 (S.D.N.Y. July 13, 1998).

*Fifth*, Plaintiffs' allegation that Orascom Telecom is somehow "[i]nfluencing U.S. foreign policy" (Opp'n at 19) by making a \$5,000 donation to a non-profit summer camp simply cannot support personal jurisdiction. *See, e.g., Steego Corp. v. Ravenal*, 830 F. Supp. 42, 51 (D. Mass. 1993) (holding charitable contributions insufficient to confer personal jurisdiction).[2]

Even accepting all of Plaintiffs' jurisdictional allegations and attributing them to Orascom Telecom, their allegations remain collectively insufficient to make a prima facie showing of personal jurisdiction. *See Helicopteros*, 466 U.S. at 416-19 (holding trips to negotiate a contract, having checks drawn at an in-state bank, purchasing 80% of a helicopter fleet from an in-state company, and sending personnel for training insufficient); *Golden Gulf Corp. v. Jordache Enters., Inc.*, No. 91 Civ. 8506, 1994 WL 62384, at \*4 (S.D.N.Y. Feb. 24, 1994) (holding licensing agreement calling for payments and product testing in the United States, a New York arbitration clause, and New York business relationships insufficient); *accord United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 619-20 (1st Cir. 2001).

In sum, Plaintiffs' jurisdictional allegations are insufficient to make a prima facie showing of personal jurisdiction. *See Jazini*, 148 F.3d at 186 (recognizing that foreign corporation may properly structure its business to separate itself from the operations of its subsidiaries, even though doing so renders jurisdictional discovery over corporation difficult).

---

[2] Notably, the Seeds of Peace goals of "reconciliation and coexistence" in regions of conflict (www.seedsofpeace.org), and the charitable contribution in question (Opp'n Ex. DD), contradict Plaintiffs' irresponsible portrayal of Orascom Telecom's Chairman in prior pleadings (*see* Pls.' Mot. for Sawiris Subpoena at 5).

## III.   THE UNITED STATES AS A WHOLE IS NOT THE RELEVANT FORUM

Plaintiffs' argument that the United States is the proper forum for determining personal jurisdiction (Opp'n at 7-8) is fundamentally flawed because this Court lacks ancillary jurisdiction under the Anti-Terrorism Act. Plaintiffs' argument depends on the erroneous contention that Orascom Telecom owes assets to the Palestinian Authority (PA), the judgment debtor in the Rhode Island action. In fact, Plaintiffs allege that Orascom Telecom owes assets to the Palestinian Investment Fund (PIF) and the Palestinian Pension Fund (PPF), purported "aliases" and "shells" of the PA. *See, e.g.,* Opp'n Ex. FF (attaching press release discussing agreement between Orascom Telecom and *the PIF*); Pls.' Opp'n to Mots. to Quash Orascom and Bishara Subpoenas, Ex. M ¶ 34 (referring to PIF and PPF as "aliases" and "shells" of PA). Thus, Plaintiffs' newfound assertion that they have alleged that Orascom Telecom owes assets to the PA "*itself*" (Opp'n at 20) fundamentally misstates the record.

While this Court has ancillary jurisdiction to enforce Plaintiffs' judgment against the PA, the Court requires an *independent basis of subject-matter jurisdiction* to pierce the corporate veil between the PA and the PIF or PPF, and to enforce the judgment against the PIF or PPF — entities that were *not* parties in the Rhode Island action. *See Peacock v. Thomas,* 516 U.S. 349, 357-58, 116 S. Ct. 862, 868 (1996) (holding district court lacked ancillary jurisdiction to pierce corporate veil and impose liability on officer and shareholder of corporation for money judgment against corporation: "We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment. Indeed, we rejected an attempt to do so in *H.C. Cook Co. v. Beecher,* 217 U.S. 497, 30 S. Ct. 601, 54 L. Ed. 855 (1910)."); *Epperson v. Entm't Express, Inc.,* 242 F.3d 100, 104 (2d Cir. 2001) (acknowledging that "an action to establish liability on the part of a third party (as in *Beecher*) . . . must have its own source of federal jurisdiction"); *HBE*

*Leasing Corp. v. Frank*, 882 F. Supp. 60, 63 (S.D.N.Y. 1995) ("Since it is apparent that there is no close nexus of fact between the claims litigated against the judgment debtors and claims that might in the future be made against the subpoenaed parties, we *lack the power to enforce the subpoenas under the doctrine of ancillary jurisdiction*"); *accord Manway Constr. Co. v. Housing Auth.*, 711 F.2d 501, 505 (2d Cir. 1983); *Williams v. Pfeffer*, 117 F. Supp. 2d 331, 335 (S.D.N.Y. 2000); *Nat'l Westminster Bank v. Cheng*, 751 F. Supp. 1158, 1160 (S.D.N.Y. 1990). Indeed, Plaintiffs concede that their alter-ego and veil-piercing avenues of relief "are not within this Court's subject-matter jurisdiction." Opp'n at 21 n.9 (citing *Epperson*).

In short, Plaintiffs are wrong that they are entitled to discovery of Orascom Telecom's purported nationwide contacts. Instead, their nonparty subpoenas should be quashed outright because this Court lacks the requisite ancillary jurisdiction to issue or enforce them.

## IV.  THE SUBPOENAS ISSUED TO ORASCOM TELECOM AND ITS REPRESENTATIVES ARE OTHERWISE DEFECTIVE

Plaintiffs contend they have directed subpoenas to Mr. El Gammal, Orascom Telecom's Investor Relations Director, in his "personal and official capacit[y]" (Opp'n at 6) when, in fact, the El Gammal subpoena seeks information and documents exclusively about Orascom Telecom. *See generally* Mem. Ex. A-4 (El Gammal Subpoena). Because Plaintiffs' arguments regarding this and the Orascom Telecom subpoena (Opp'n at 6-7, 26) have already been addressed in Orascom Telecom's motions to quash the Orascom Telecom and Bichara subpoenas, Orascom Telecom expressly incorporates those motions herein by reference. *See* Mem. Mot. Quash Orascom Subpoena at 3-8; Mem. Mot. Quash Bichara Subpoena at 3-4; Consol. Reply at 1-2, 6-10. In brief, Orascom Telecom objects to the Orascom Telecom and El Gammal subpoenas because personal service upon a representative of a foreign corporation does not confer personal jurisdiction over the corporation, the subpoenas contravene Rule 45's 100-mile rule, and the

9

subpoenas are overbroad and unduly burdensome and require disclosure of privileged and other protected matters. To avoid burdening the Court, these arguments are not repeated here.

## V.    THE COURT LACKS JURISDICTION OVER THE PROPERTY IN QUESTION

For the first time, Plaintiffs characterize the assets at issue exclusively as a debt, and falsely accuse Orascom Telecom of "misleadingly label[ing]" the debt as property (Opp'n at 24), when in fact Plaintiffs brought their turnover proceeding in state court under both N.Y. C.P.L.R. § 5225 and § 5227, which relate to property and debt, respectively. *See* Pls.' Opp'n to Mots. to Quash Orascom and Bishara Subpoenas, Ex. M. Plaintiffs advance their debt argument based exclusively on references in Orascom Telecom press releases to "cash consideration, partly upfront partly deferred." Opp'n at 22 & Ex. EE. Such references far from establish that Orascom Telecom owes a debt, rather than property, to the Palestinian funds in question. Further, a judgment against the PIF and the PPF is a prerequisite to any enforcement proceeding against Orascom Telecom.

### CONCLUSION

For the foregoing reasons, Orascom Telecom's Motion to Quash Outstanding Nonparty Subpoenas should be granted.

Dated: September 26, 2005                          Respectfully submitted,

**WHITE & CASE**ᴸᴸᴾ

By:  *Nicole E. Erb*

Christopher M. Curran (CC-4779)
Nicole E. Erb (NE-7104)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Tel: 202-626-3600
Fax: 202-639-9355

*Attorneys for Nonparty Orascom Telecom Holding S.A.E.*

10

## CERTIFICATE OF SERVICE

I certify that on September 26, 2005, I caused paper copies of Orascom Telecom's Reply

in Support of Its Motion to Quash Nonparty Subpoenas and accompanying exhibit to be served

upon the following by hand and overnight courier, respectively:

Robert J. Tolchin, Esq.
Jaroslawicz & Jaros
150 William St., 19th Floor
New York, NY 10038
Tel: 212-227-2780

David J. Strachman, Esq.
McIntyre, Tate, Lynch & Holt, LLP
321 South Main St., Suite 400
Providence, RI 02903
Tel: 401-351-7700

Nicole Erb

RECYCLED





# SECOND SUPPLEMENTAL DECLARATION OF AMR ESMAT ABAZA

1.      I am the Treasury Director of Orascom Telecom Holding S.A.E. ("OTH"), an entity organized and existing under the laws of Egypt, and have personal knowledge of the facts set forth in this supplemental declaration. I submit this second supplemental declaration to address certain assertions contained in Plaintiffs' Memorandum of Law in Opposition to Orascom's Motion to Quash Outstanding Nonparty Subpoenas (pp. 3, 12-13, 16-19).

2.      Shares of OTH are traded on the Cairo and Alexandria Stock Exchange, and Global Depository Receipts are traded on the London Stock Exchange. OTH shares are not listed or traded on any stock exchange in the United States. The Bank of New York serves as a depository bank for OTH shares and issues 144A Global Depository Receipts representing those shares. Apart from the arrangement with the Bank of New York, any offering or sale of OTH securities in the United States consists of private off-exchange activities done without the consent, authorization or participation of OTH.

3.      The cited line of credit was a syndicated loan entered into in 2000 by OTH with Chase Manhattan plc, Citibank, N.A. and various other Middle Eastern and European-based banks. Commitments from Chase Manhattan were from the Chase Manhattan Bank in London and by Citibank through Citibank, N.A., Bahrain and Citibank, N.A., Cairo. No commitments were made from the United States. This agreement was negotiated and executed outside of the United States and pertains solely to operations of OTH outside of the United States, including refinancing existing debts and the purchase of assets in Africa. The credit facility was closed in 2001.



4.      The cited contract with Motorola is between OTH and Motorola Limited, an entity registered and existing under the laws of England and Wales, and not with Motorola, Inc. Orascom Telecom Iraq Corporation ("OTI"), an entity organized and existing under the laws of Iraq with its principal place of business in Iraq, and not OTH, is a party to the term-loan facility with the Motorola Credit Corporation to help finance the sale of equipment pursuant to this contract. These contracts were negotiated and executed outside of the United States and pertain solely to operations of OTH and OTI outside of the United States. Neither OTH nor OTI were a party to any arrangements for the cited insurance procured by the Motorola Credit Corporation from the Overseas Private Investment Corporation.

5.      The cited contract with Marconi Corporation plc, an entity organized and existing under the laws of England and Wales, was entered into by OTH with Metapath Software International Limited, also an entity incorporated under the laws of England and Wales. This contract was negotiated and executed outside of the United States and pertains solely to operations of OTH outside of the United States.

6.      The cited contract with the David Ross Group was not entered into by OTH, but by M-Link Ltd., an entity organized and existing under the laws of Mauritius with its principal place of business in Belgium. This contract was negotiated and executed outside of the United States and pertains solely to operations of M-Link Ltd. outside of the United States.

7.      The cited contract with Tyco Telecommunications was not entered into by OTH, but by Transworld Associates (Pvt.), Ltd. ("Transworld"), an entity organized and existing under the laws of Pakistan with its principal place of business in Pakistan. This contract was

2



negotiated and executed outside of the United States and pertains solely to operations of Transworld outside of the United States.

8.    The cited roaming agreements with AT&T Wireless and Cincinnati Bell Wireless were not entered into by OTH, but by various foreign affiliates. These agreements are in the standard form provided by the International Telecommunications Union and are customary for international operators to allow for operators to roam on one another's networks worldwide.

9.    The cited contract with LCC International was not entered into by OTH, but is actually two contracts, one entered into by Orascom Telecom Algerie ("OTA"), an entity organized and existing under the laws of Algeria with its principal place of business in Algeria, and the other entered into by the Egyptian Company for Mobile Services ("MobiNil"), an entity organized and existing under the laws of Egypt with its principal place of business in Egypt. These contracts were negotiated and executed outside of the United States and pertain solely to operations of OTA and MobiNil outside of the United States.

10.    The cited contract with Tellabs was not entered into by OTH. I cannot confirm whether any OTH affiliates entered into the cited contract with Tellabs.

11.    The cited contract with Tekelec was not entered into by OTH, but by OTA. This contract was negotiated and executed outside of the United States and pertains solely to operations of OTA outside of the United States.

12.    The cited contract for the purchase of equipment from G.M. Selby, Inc. of Miami, Florida ultimately was not pursued by OTH or any of its subsidiaries and the contemplated related financing backed by a loan guarantee from the United States Export-Import Bank was cancelled.

3



13.    The cited purchase contract for the purchase of shares relates to a 2001 purchase by OTH of shares held by Motorola International Development Corporation in MobiNil. All shares of MobiNil, including those purchased, are issued under the laws of Egypt. MobiNil's publicly-traded shares are traded exclusively on the Cairo and Alexandria Stock Exchange. The agreements for the share transfer were negotiated and executed outside of the United States.

14.    The cited relationship with Microsoft is not with OTH, but LINKdotNET ("LINK"), an internet service provider organized and existing under the laws of Egypt with its principal place of business in Egypt. The contract relates to LINK's franchise of Microsoft's MSN Arabia web portal in the Middle East. This contract was executed outside of the United States and pertains solely to operations of LINK outside of the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Cairo, Egypt, this 23rd day of September, 2005.

Amr Esmat Abaza    23/9/2005

4

⬜

## Letter of Representations

[To be Completed by Depositary and, if sponsored, Issuer]

Orascom Telecom Holding, S.A.E.

[Name of Issuer of Underlying Securities]

The Bank of New York

[Name of Depositary]

[Date] July 18, 2000

Attention: General Counsel's Office
**The Depository Trust Company**
55 Water Street 49th Floor
New York, NY 10041-0099

Re:  Offering of 1,995,250 Rule 144A GDSs – CUSIP NO. 68554W106
International Offering of 11,712,750 Regulation S GDSs – CUSIP
No. 68554W205

[Issue description, including CUSIP number (the "Securities")]

Ladies and Gentlemen:

This letter sets forth our understanding with respect to certain matters relating to the

Securities representing Depositary Shares. Depositary will act as depositary, trustee, transfer agent

and registrar or other such agent of Issuer with respect to the Securities. The Bank of New York

will act as custodian ("Custodian") for The Depository Trust Company ("DTC") of the Security

certificate. The Securities have been issued pursuant to   deposit agreement or other such documents

dated as of July 14, 2000 , authorizing the issuance of the Securities (the "Documents").

adr2142-7/99

EFG—Hermes Investment Banking, S.A.E.

_____ is distributing the Securities through DTC.
[Underwriter/Placement Agent]

To induce DTC to accept the Securities as eligible for deposit at DTC, and to act in accordance with its Rules with respect to the Securities, ~~[Issuer and]~~ Depositary makes the following representations to DTC:

1.  Prior to closing on the Securities on __July 18, 2000_____, there shall be deposited with Custodian, on behalf of DTC, one or more Security certificates registered in the name of DTC's nominee, Cede & Co., evidencing the total amount of the Securities as set forth on Schedule A hereto and as indicated on the records of the Depositary. If, however, the aggregate offering value of the Securities exceeds $400 million, one certificate shall be issued with respect to each $400 million of offering value and an additional certificate shall be issued with respect to any remaining offering value. Said Security certificate(s) shall remain in Custodian's custody subject to the provisions of the Balance Certificate Agreement currently in effect between the Custodian and DTC. The Security certificate(s) shall bear the following legend:

Unless this certificate is presented by an authorized representative of The Depository Trust Company, a New York corporation ("DTC"), to Issuer or its agent for registration of transfer, exchange, or payment, and any certificate issued is registered in the name of Cede & Co. or in such other name as is requested by an authorized representative of DTC (and any payment is made to Cede & Co. or to such other entity as is requested by an authorized representative of DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL inasmuch as the registered owner hereof, Cede & Co., has an interest herein. , subject to applicable New York law,

2.  Depositary: (a) understands that DTC has no obligation to, and will not, communicate to its participants ("Participants") or to any person having an interest in the Securities any information contained in the Security certificate(s); and (b) acknowledges that neither DTC's Participants nor any person having an interest in the Securities shall be deemed to have notice of the provisions of the Security certificate(s) by virtue of submission of such certificate(s) to DTC.

3.  On each day on which Depositary is open for business and on which it receives an instruction originated by a Participant through DTC's Deposit/Withdrawal at Custodian ("DWAC") system to increase the Participant's account by a specified number of Securities (a "Deposit Instruction"), Depositary shall, no later than 6:30 p.m. (Eastern Time) that day, either approve or cancel the Deposit Instruction through the DWAC system.

On each day on which Depositary is open for business and on which it receives an instruction originated by a Participant through the DWAC system to decrease the Participant's account by a specified number of Securities (a "Withdrawal Instruction"), Depositary shall, no later than 6:30 p.m. (Eastern Time) that day, either approve or cancel the Withdrawal Instruction through the DWAC system.

-2-

adr2112-7/99

CONFIDENTIAL                    BNY 0581

Depositary agrees that its approval of a Deposit or Withdrawal Instruction shall be deemed to be the receipt by DTC of a new, reissued, or reregistered certified Security on registration of transfer to the name of Cede & Co. for the quantity of Securities evidenced by the Balance Certificate after the Deposit or Withdrawal Instruction is effected.

4.    In the event of any solicitation of consents from or voting by holders of the Securities, [Issuer or] Depositary shall establish a record date for such purposes (with no provision for revocation of consents or votes by subsequent holders) and shall send notice of such record date to DTC no fewer than 15 calendar days in advance of such record date. Notices to DTC pursuant to this Paragraph by telecopy shall be directed to DTC's Reorganization Department, Proxy Unit at (212) 855-5181 or (212) 855-5182. If the party sending the notice does not receive a telecopy receipt from DTC confirming that the notice has been received, such party shall telephone (212) 855-5202. Notices to DTC pursuant to this Paragraph, by mail or by any other means, shall be sent to:

> Supervisor, Proxy Unit
> Reorganization Department
> The Depository Trust Company
> 55 Water Street 50th Floor
> New York, NY 10041-0099

5.    In the event of a stock split, recapitalization, or any similar transaction resulting in the cancellation of all or any part of the Securities represented thereby, [Issuer or] Depositary shall send DTC a notice of such event as soon as practicable, but in no event fewer than five business days prior to the effective date of such transaction. Notices regarding stock splits by telecopy shall be directed to DTC's Dividend Department, Stock Dividends at (212) 855-4545 and receipt of such notices by DTC shall be confirmed by telephoning (212) 855-4530. Such notices, by mail or by any other means, shall be directed to Supervisor, Stock Dividends, Dividend Department at the address indicated in Paragraph 6. All other notices regarding this Paragraph by telecopy shall be sent to Supervisor, Rights Offerings at (212) 855-5259 and receipt of such notices by DTC shall be confirmed by telephoning (212) 855-5260. Such notices, by mail or by any other means, shall be sent to Supervisor, Rights Offerings, Reorganization Department at the address indicated in Paragraph 4.

6.    In the event of an offering or issuance of rights with respect to the Securities outstanding, [Issuer or] Depositary shall send DTC a notice specifying: (a) the amount of and conditions, if any, applicable to such rights offering or issuance; (b) any applicable expiration or deadline date, or any date by which any action on the part of holders of such Securities is required; and (c) the date any required notice is to be distributed to holders of such Securities (the "Publication Date"). Such notice shall be sent to DTC by a secure means (*e.g.,* legible telecopy, registered or certified mail, overnight delivery) in a timely manner designed to assure that such notice is in DTC's possession no later than the close of business on the business day before or, if possible, two business days before the Publication Date. [Issuer or] Depositary shall forward such notice either in a separate secure transmission for each CUSIP number or in a secure transmission for multiple CUSIP numbers (if applicable) which includes a manifest or list of each CUSIP number submitted in that transmission. (The party sending such notice shall have a method to verify subsequently the use of

-3-

CONFIDENTIAL

BNY 0582

such means and the timeliness of such notice.) The Publication Date will be as soon as practicable after the announcement by the Issuer of any offering or issuance of rights with respect to the Securities represented thereby. DTC requires that such Publication Date be no fewer than 30 days nor more than 60 days prior to the related offering date or issuance date. Notices to DTC pursuant to this Paragraph shall be sent by telecopy to DTC's Dividend Department at (212) 855-4563. If the party sending the notice does not receive a telecopy receipt from DTC confirming that the notice has been received, such party shall telephone (212) 855-4550. Notice to DTC pursuant to this Paragraph, by mail or by any other means, shall be sent to:

> Manager, Announcements
> Dividend Department
> The Depository Trust Company
> 55 Water Street 25th Floor
> New York, NY 10041-0099

7.      In the event of an invitation to tender the Securities (including mandatory tenders, exchanges, and capital changes), notice by [Issuer or] Depositary to holders of the Securities specifying the terms of the tender and the Publication Date of such notice shall be sent to DTC by a secure means (*e.g.*, legible telecopy, registered or certified mail, overnight delivery) in a timely manner designed to assure that such notice is in DTC's possession no later than the close of business on the business day before or, if possible, two business days before the Publication Date. Issuer or Agent shall forward such notice either in a separate secure transmission for each CUSIP number or in a secure transmission for multiple CUSIP numbers (if applicable) which includes a manifest or list of each CUSIP number submitted in that transmission. (The party sending such notice shall have a method to verify subsequently the use and timeliness of such notice.). Notices to DTC pursuant to this Paragraph and notices of other corporate actions by telecopy shall be directed to DTC's Reorganization Department at (212) 855-5488. If the party sending the notice does not receive a telecopy receipt from DTC confirming that the notice has been received, such party shall telephone (212) 855-5290. Notices to DTC pursuant to this Paragraph, by mail or by any other means, shall be sent to:

> Manager, Reorganization Department
> Reorganization Window
> The Depository Trust Company
> 55 Water Street 50th Floor
> New York, NY 10041-0099

8.      All notices and payment advices sent to DTC shall contain the CUSIP number of the Securities.

9.      After establishing the payment to be made on the Securities, Depositary shall notify DTC's Dividend Department of the payment, the exchange rate used (if applicable), and the payment date preferably five, but no fewer than two business days prior to the related payment date or distribution date.

10.     Depositary shall provide a written notice of payment information to DTC as soon as the payment information is available. Depositary shall provide such notice directly to DTC

-4-

electronically, as previously arranged by Depositary. If electronic transmission has not been arranged, absent any other arrangements between Depositary and DTC, such notice shall be sent to DTC's Dividend Department by telecopy (with confirmation of receipt), by mail, or by any other means, as indicated in Paragraph 6.

11.    Dividend payments and distributions shall be received by Cede & Co., as nominee of DTC, or its registered assigns, in same-day funds no later than 2:30 p.m. (Eastern Time) on the payment date. [Issuer shall remit by 1:00 p.m. (Eastern Time) on the payment date all such dividend and distribution payments due Depositary, or at such earlier time as may be required by Depositary to guarantee that DTC shall receive payment in same-day funds no later than 2:30 p.m. (Eastern Time) on the payment date.] Absent any other arrangements between Depositary and DTC, such funds shall be wired to the Dividend Deposit Account number which will be stamped on the signature page hereof at the time DTC executes this Letter of Representations.

12.    Depositary shall provide DTC, no later than 12:00 noon (Eastern Time) on each payment date, automated notification of CUSIP-level detail. If the circumstances prevent the funds paid to DTC from equaling the dollar amount associated with the detail payment by 12:00 noon (Eastern Time), Depositary must provide CUSIP-level reconciliation to DTC no later than 2:30 p.m. (Eastern Time). Reconciliation must be provided by either automated means or written format. Such reconciliation notice, if sent by telecopy, shall be directed to DTC's Dividend Department at (212) 855-4633 and receipt of such notice shall be confirmed by telephoning (212) 855-4430.

13.    Redemption payments shall be received by Cede & Co., as nominee of DTC, or its registered assigns, in same-day funds no later than 2:30 p.m. (Eastern Time) on the payment date. [Issuer shall remit by 1:00 p.m. (Eastern Time) on the payment date all such redemption payments due Depositary, or at such earlier time as required by Depositary to guarantee that DTC shall receive payment in same-day funds no later than 2:30 p.m. (Eastern Time) on the payment date.] Absent any other arrangements between Depositary and DTC, such funds shall be wired to the Redemption Deposit Account number which will be stamped on the signature page hereof at the time DTC executes this Letter of Representations.

14.    Reorganization payments and CUSIP-level detail resulting from corporate actions (such as tender offers, remarketings, or mergers) shall be received by Cede & Co., as nominee of DTC, or its registered assigns, in same-day funds no later than 2:30 p.m. (Eastern Time) on the payment date. [Issuer shall remit by 1:00 p.m. (Eastern Time) on the payment date all such reorganization payments due Depositary, or at such earlier time as required by Depositary to guarantee that DTC will receive payment in same-day funds no later than 2:30 p.m. (Eastern Time) on the payment date]. Absent any other arrangements between Depositary and DTC, such funds shall be wired to the Reorganization Deposit Account number which will be stamped on the signature page hereof at the time DTC executes this Letter of Representations.

15.    DTC may direct [Issuer or] Depositary to use any other number or address as the number or address to which notices or payments may be sent.

16.    In the event of a redemption, acceleration, or any other similar transaction (*e.g.,* tender made and accepted in response to [Issuer or] Depositary's invitation) necessitating a reduction

CONFIDENTIAL

in the aggregate principal amount of Securities outstanding or an advance refunding of part of the Securities outstanding, DTC, in its discretion: (a) may request [Issuer or] Depositary to issue and authenticate a new Security certificate; or (b) may make an appropriate notation on the Security certificate indicating the date and amount of such reduction in the number of Securities outstanding, except in the case of final redemption, in which case the certificate will be presented to [Issuer or] Depositary prior to payment, if required.

17.    In the event that [Issuer or] Depositary determines that beneficial owners of Securities shall be able to obtain certificated Securities, [Issuer or] Depositary shall notify DTC of the availability of certificates. In such event, [Issuer or] Depositary shall issue, transfer, and exchange certificates in appropriate amounts, as required by DTC and others.

18.    DTC may discontinue providing its services as securities depository with respect to the Securities at any time by giving reasonable notice to Depositary (at which time DTC will confirm with Depositary the aggregate principal amount of Securities outstanding). Under such circumstances, at DTC's request, [Issuer or] Depositary shall cooperate fully with DTC by taking appropriate action to make available one or more separate certificates evidencing Securities to any DTC Participant having Securities credited to its DTC accounts.

19.    This Letter of Representations may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original, but all such counterparts together shall constitute but one and the same instrument.

20.    This Letter of Representations shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to principles of conflicts of law.

21.    The sender of each notice delivered to DTC pursuant to this Letter of Representations is responsible for confirming that such notice was properly received by DTC.

22.    [Issuer or] Depositary recognizes that DTC does not in any way undertake to, and shall not have any responsibility to, monitor or ascertain the compliance of any transactions in the Securities with the following, as amended from time to time: (a) any exemptions from registration under the Securities Act of 1933; (b) the Investment Company Act of 1940; (c) the Employee Retirement Income Security Act of 1974; (d) the Internal Revenue Code of 1986; (e) any rules of any self-regulatory organizations (as defined under the Securities Exchange Act of 1934); or (f) any other local, state, or federal laws or regulations thereunder.

23.    [Issuer or] Depositary hereby authorizes DTC to provide listings of Participants' holdings, known as Security Position Listings ("SPLs") with respect to the Securities from time to time at the request of the Depositary. DTC charges a fee for such SPLs. [This authorization, unless revoked by Issuer, shall continue with respect to the Securities while any Securities are on deposit at DTC, until and unless Depositary shall no longer be acting. In such event, Issuer shall provide DTC with similar evidence, satisfactory to DTC, of the authorization of any successor thereto so to act.] Requests for SPLs shall be sent by telecopy to the Proxy Unit of DTC's Reorganization Department at (212) 855-5181 or (212) 855-5182. Receipt of such requests shall be confirmed by telephoning (212) 855-5202. Requests for such SPLs, sent by mail or by any other means, shall be

-6-

adr2112-7/99

CONFIDENTIAL

BNY 0585

directed to the address indicated in Paragraph 4.

24.     [Issuer or] Depositary shall comply with the applicable requirements stated in DTC's Operational Arrangements, as they may be amended from time to time. DTC's Operational Arrangements are posted on DTC's website at "www.DTC.org."

25.     The following rider(s), attached hereto, are hereby incorporated into this Letter of Representations:

Representations re: Reg S
Representations re: Rule 144A

-7-

CONFIDENTIAL          BNY 0586

Notes:

A. If there is an Issuer (as defined in this Letter of Representations), Issuer, as well as Depositary, must sign this Letter. If there is no Issuer, in signing this Letter Depositary itself undertakes to perform all of the obligations set forth herein.

B. Schedule B contains statements that DTC believes accurately describe DTC, the method of effecting book-entry transfers of securities distributed through DTC, and certain related matters.

Very truly yours,

[Issuer, if applicable]

By: _____ N/A _____
[Authorized Officer's Signature]

The Bank of New York
[Depositary]

By: _____ _Dorsey P. Glost_ _____
[Authorized Officer's Signature]

Received and Accepted:
THE DEPOSITORY TRUST COMPANY

By: _____ _Richard B. Nesson_ _____

Funds should be wired to:

The Chase Manhattan Bank
ABA # 021 000 021
For credit to a/c Code & Co.
c/o The Depository Trust Company

[Select Appropriate Account.]

Dividend Deposit Account # 066-026776

Redemption Deposit Account # 066-027306

Reorganization Deposit Account # 066-027608

cc:        Underwriter/Placement Agent
           Underwriter's/Placement Agent's Counsel

-8-

adr2112-7/99

BNY 0587

SCHEDULE A

<u>Orascom Telecom Holding, S.A.E.</u>
Offering of 1,995,250 Rule 144A GDSs – CUSIP No. 68554W106
International Offering of 11,712,750 Regulation S GDSs – CUSIP No.
68554W205
[Describe Issue]

| CUSIP Number | Share Total (GDSs) | Value($ Amount) Per GDS |
|---|---|---|
| 68554W205 (Regulation S GDSs) | 11,712,750 | $8.00 |
| 68554W106 (Rule 144A GDSs) | 1,995,250 | $8.00 |

-9-

CONFIDENTIAL

BNY 0588

## SAMPLE OFFERING DOCUMENT LANGUAGE
## DESCRIBING BOOK-ENTRY-ONLY ISSUANCE
(Prepared by DTC--bracketed material may be applicable only to certain issues)

1.    The Depository Trust Company ("DTC"), New York, NY, will act as securities depository for the securities (the "Securities"). The Securities will be issued as fully-registered securities registered in the name of Cede & Co. (DTC's partnership nominee) or such other name as may be requested by an authorized representative of DTC. One fully-registered Security certificate will be issued for [each issue of] the Securities, [each] in the aggregate principal amount of such issue, and will be deposited with DTC. [If, however, the aggregate principal amount of [any] issue exceeds $400 million, one certificate will be issued with respect to each $400 million of principal amount and an additional certificate will be issued with respect to any remaining principal amount of such issue.]

2.    DTC is a limited-purpose trust company organized under the New York Banking Law, a "banking organization" within the meaning of the New York Banking Law, a member of the Federal Reserve System, a "clearing corporation" within the meaning of the New York Uniform Commercial Code, and a "clearing agency" registered pursuant to the provisions of Section 17A of the Securities Exchange Act of 1934. DTC holds securities that its participants ("Direct Participants") deposit with DTC. DTC also facilitates the settlement among Direct Participants of securities transactions, such as transfers and pledges, in deposited securities through electronic computerized book-entry changes in Direct Participants' accounts, thereby eliminating the need for physical movement of securities certificates. Direct Participants include securities brokers and dealers, banks, trust companies, clearing corporations, and certain other organizations. DTC is owned by a number of its Direct Participants and by the New York Stock Exchange, Inc., the American Stock Exchange LLC, and the National Association of Securities Dealers, Inc. Access to the DTC system is also available to others such as securities brokers and dealers, banks, and trust companies that clear through or maintain a custodial relationship with a Direct Participant, either directly or indirectly ("Indirect Participants"). The Rules applicable to DTC and its Direct and Indirect Participants are on file with the Securities and Exchange Commission.

3.    Purchases of Securities under the DTC system must be made by or through Direct Participants, which will receive a credit for the Securities on DTC's records. The ownership interest of each actual purchaser of each Security ("Beneficial Owner") is in turn to be recorded on the Direct and Indirect Participants' records. Beneficial Owners will not receive written confirmation from DTC of their purchase, but Beneficial Owners are expected to receive written confirmations providing details of the transaction, as well as periodic statements of their holdings, from the Direct or Indirect Participant through which the Beneficial Owner entered into the transaction. Transfers of ownership interests in the Securities are to be accomplished by entries made on the books of Direct and Indirect Participants acting on behalf of Beneficial Owners. Beneficial Owners will not receive certificates representing their ownership interests in Securities, except in the event that use of the book-entry system for the Securities is discontinued.

-10-

CONFIDENTIAL

BNY 0589

4.    To facilitate subsequent transfers, all Securities deposited by Direct Participants with DTC are registered in the name of DTC's partnership nominee, Cede & Co. or such other name as may be requested by an authorized representative of DTC. The deposit of Securities with DTC and their registration in the name of Cede & Co. or such other nominee do not effect any change in beneficial ownership. DTC has no knowledge of the actual Beneficial Owners of the Securities; DTC's records reflect only the identity of the Direct Participants to whose accounts such Securities are credited, which may or may not be the Beneficial Owners. The Direct and Indirect Participants will remain responsible for keeping account of their holdings on behalf of their customers.

5.    Conveyance of notices and other communications by DTC to Direct Participants, by Direct Participants to Indirect Participants, and by Direct Participants and Indirect Participants to Beneficial Owners will be governed by arrangements among them, subject to any statutory or regulatory requirements as may be in effect from time to time. [Beneficial Owners of Securities may wish to take certain steps to augment transmission to them of notices of significant events with respect to the Securities, such as redemptions, tenders, defaults, and proposed amendments to the security documents. Beneficial Owners of Securities may wish to ascertain that the nominee holding the Securities for their benefit has agreed to obtain and transmit notices to Beneficial Owners, or in the alternative, Beneficial Owners may wish to provide their names and addresses to the registrar and request that copies of the notices be provided directly to them.]

[6.    Redemption notices shall be sent to DTC. If less than all of the Securities within an issue are being redeemed, DTC's practice is to determine by lot the amount of the interest of each Direct Participant in such issue to be redeemed.]

7.    Neither DTC nor Cede & Co. (nor such other DTC nominee) will consent or vote with respect to the Securities. Under its usual procedures, DTC mails an Omnibus Proxy to Issuer as soon as possible after the record date. The Omnibus Proxy assigns Cede & Co.'s consenting or voting rights to those Direct Participants to whose accounts the Securities are credited on the record date (identified in a listing attached to the Omnibus Proxy).

8.    Redemption proceeds, distributions, and dividend payments on the Securities will be made to Cede & Co., or such other nominee as may be requested by an authorized representative of DTC. DTC's practice is to credit Direct Participants' accounts, upon DTC's receipt of funds and corresponding detail information from Issuer or Agent on payable date in accordance with their respective holdings shown on DTC's records. Payments by Participants to Beneficial Owners will be governed by standing instructions and customary practices, as is the case with securities held for the accounts of customers in bearer form or registered in "street name," and will be the responsibility of such Participant and not of DTC, Agent, or Issuer, subject to any statutory or regulatory requirements as may be in effect from time to time. Payment of redemption proceeds, distributions, and dividends to Cede & Co. (or such other nominee as may be requested by an authorized representative of DTC) is the responsibility of Issuer or Agent, disbursement of such payments to Direct Participants shall be the responsibility of DTC, and disbursement of such payments to the Beneficial Owners shall be the responsibility of Direct and Indirect Participants.

-11-

CONFIDENTIAL                     BNY 0590

[9.    A Beneficial Owner shall give notice to elect to have its Securities purchased or tendered, through its Participant, to [Tender/Remarketing] Agent, and shall effect delivery of such Securities by causing the Direct Participant to transfer the Participant's interest in the Securities, on DTC's records, to [Tender/Remarketing] Agent. The requirement for physical delivery of Securities in connection with an optional tender or a mandatory purchase will be deemed satisfied when the ownership rights in the Securities are transferred by Direct Participants on DTC's records and followed by a book-entry credit of tendered Securities to [Tender/Remarketing] Agent's DTC account.]

10.      DTC may discontinue providing its services as securities depository with respect to the Securities at any time by giving reasonable notice to Issuer or Agent. Under such circumstances, in the event that a successor securities depository is not obtained, Security certificates are required to be printed and delivered.

11.      Issuer may decide to discontinue use of the system of book-entry transfers through DTC (or a successor securities depository). In that event, Security certificates will be printed and delivered.

12.      The information in this section concerning DTC and DTC's book-entry system has been obtained from sources that Issuer believes to be reliable, but Issuer takes no responsibility for the accuracy thereof.

adr2112-7/99

CONFIDENTIAL                    BNY 0591

---

## SHARE PURCHASE AGREEMENT

---

DATED 27 FEBRUARY 2005

BETWEEN

PALESTINE INVESTMENT FUND

AND

ORASCOM TELECOM HOLDING S.A.E.

TABLE OF CONTENTS

1    SALE AND PURCHASE OF THE TRANSFER SHARES ................................ 3

2    PURCHASE PRICE ................................ 4

3    COMPLETION ................................ 4

4    CONFIDENTIALITY ................................ 5

5    GOVERNING LAW AND DISPUTE RESOLUTION ................................ 6

6    MISCELLANEOUS ................................ 6

A. S.

01/03 2005 02:11 FAX 7202 0/37707    PHONE NO. :    .......VAN.    01 JAN 1998 05:10PM P1    p. 12
28 Feb 2005 12:11 AM   HP LASERJET FAX

3.

## SHARE PURCHASE AGREEMENT

This Share Purchase Agreement (the "Agreement" or the "SPA") is made in two originals on this 27th day of February 2005, by and between:

1.  **ORASCOM TELECOM HOLDING S.A.E.**, a corporation duly incorporated and validly existing under the laws of Egypt, having its principle offices at Nile City Towers - South Tower, Ramlet Beaulac, Cairo - Egypt, represented by Mr. Naguib Sawiris, Chairman and Chief Executive Officer (the "Purchaser"); and

2.  **PALES FIRE INVESTMENT FUND**, a fund organized under the laws of the Palestinian Territories, represented by Mr. Mahmoud Rachid, Managing Director (the "Seller").

The Purchaser and the Seller are hereinafter collectively referred to us the "Parties" or individually as a "Party".

**WHEREAS:**

**WHEREAS**, the Seller and the Purchaser are shareholders of Oratel International Inc., an International Business Corporation with a share capital of one hundred and sixty four million five hundred thousand shares (164,50 000), registered in the British Virgin Islands with the Registrar of Companies under number 387603, whose registered office is at Trident Trust BVI Limited, Trident Chamber P O.Box 146 Road Town Tortola, British Virgin Islands ("Oratel").

**WHEREAS**, the Seller and the Purchaser are shareholders of Orascom Tunisia Holding Limited, an International Business Company with a share capital of fifty thousand shares (50,000), registered in the British Virgin Islands with the Registrar of Companies under number 270500, whose registered office is at Cisco Building Wickhams Cay P.O.Box 662, Road Town Tortola, British Virgin Islands ("OTUH").

**WHEREAS**, the Seller and the Purchaser are shareholders of Carthage Consortium Limited, an International Business Company with a share capital of fifty thousand shares (50,000), registered in the British Virgin Islands with the Registrar of Companies under number 481913, whose registered office is at Cisco Building Wickhams Cay P.O.Box 662, Road Town Tortola, British Virgin Islands ("CCC").

The Seller currently owns 122,200,000 shares of the share capital of Oratel (the "Oratel Shares"), 22,025 shares of the share capital of CC (the "CC Shares"), and 22,025 shares of the share capital of OTUH (the "OTUH Shares"). The Oratel Shares, the OTUH Shares, and the CC Shares shall be collectively referred to as (the "Transfer Shares").

The Purchaser wishes to purchase from the Seller who wishes to sell the Transfer Shares (the "Transaction"), subject to the terms and conditions set forth in the Agreement.

**IT IS AGREED AS FOLLOWS:**

**1   SALE AND PURCHASE OF THE TRANSFER SHARES:**

Upon the terms and subject to the conditions set forth in this Agreement, on the Completion Date, the Seller shall sell and transfer to the Purchaser, with full title guarantee, and the Purchaser shall purchase, all but not less than all of the Transfer Shares, together with all

01/03 2005 TUE 01:13 [TX/RX NO 3893] @012    01/03 2005 TUE 02:34 [TX/RX NO 3893] @004

PHONE NO. :    01 JAN. 1998 05:11PM P2
28 Feb 2005 12:17AM HP LASERJET FAX    P. 13

ing is then and thereafter attached thereto, including all dividends to be distributed in respect of the Transfer Shares after the Completion Date.

## 2 PURCHASE PRICE

### 2.1 Price

The aggregate purchase price for the Transfer Shares shall be $340,000,000 (three hundred and forty million US Dollars) (the "Purchase Price") calculated on the following basis:

a) $265,000,000 (two hundred and sixty five million US Dollars) for the Orated Shares;
b) $52,500,000 (fifty two million and five hundred thousand US Dollars) for the OTUH Shares; and
c) $22,500,000 (twenty two million and five hundred thousand US Dollars) for the GC Shares.

### 2.2 Payment

The payment of the Purchase Price shall be made in two instalments as follows:

a) First instalment amounting to $100,000,000 (one hundred million US Dollar) shall be made on or before 28 February 2005 (the "First Instalment"); and
b) Second instalment amounting to $240,000,000 (two hundred and forty million US Dollars) shall be made on 30th April 2005 (the "Second Instalment").

In addition to the Purchase Price mentioned immediately above, the Purchaser shall as to the following amounts owed to the Seller (the "Outstanding Amount"):

a) A cash payment of Euro 7,708,550 representing the Seller's contribution to the cash collateral for the letter of credit issued by Carthage Consortium to the amount of Euro 17.5 million in the context of the sponsor support arrangements in relation to the long term finance of OTT; and
b) The portion of the cash collateral contributed by the Seller to support the cash collateral made by Carthage Consortium related to the Tunisian International Bank bridge loan to OTT, the first transfer is to the Seller for the amount of Euro 1,303,977.7.

The Outstanding Amount shall be paid on or before the date of payment of the First Instalment.

## 3 COMPLETION

### 3.1 Completion Date and place

Completion shall take place on the date of payment of the First Instalment (the "Completion Date").

### 3.2 Seller's obligations with a view to Completion

On the Completion Date, the Seller shall deliver, or procure delivery, to the Purchaser or its representatives of the following:

(a) **In respect of the Oratel Shares:**

   (i) a share transfer form in the form attached to this Agreement as Annex 1 duly executed by the Seller in favour of the Purchaser;

   (ii) original copies of the share certificates number 16,17,18,20 and 25; and

   (iii) the resignation of the board member(s) representing the interest of the Seller from the board of directors of Orascom Telecom Algeria spa.

(b) **In respect of the OTUH Shares:**

   (i) a share transfer form in the form attached to this Agreement as Annex 2 duly executed by the Seller in favour of the Purchaser;

   (ii) execution of all documents and taking all other action necessary for purposes of release of the original copy of the share certificate number 8 by ABC International Bank PLC.

(c) **In respect of the CC Shares:**

   (i) a share transfer form in the form attached to this Agreement as Annex 3 duly executed by the Seller in favour of the Purchaser;

   (ii) original copies of the share certificates number 7

**4    REPRESENTATIONS AND WARRANTIES**

Other than the Share Charge deed dated 7 September 2004 entered into by and between the Seller and ABC International Bank PLC in relation to the OTUH Shares, the Seller solely represents and warrants that there is no pledge, lien or other encumbrances, and there is no agreement, arrangement or obligation to create or give an encumbrance, in relation to any of the Oratel Shares or any rights of the Seller in any unissued shares in the capital of Oratel or OTUH or CC in favour of the Seller. No person or entity is entitled to an encumbrance in relation to any of the Transfer Shares.

The Seller further represents and warrants that other than this Agreement, the Seller (including any authorized representative of the Seller) has not entered into any agreement, arrangement or obligation released to the Seller's right, if any, to require the creation, allotment, issue, transfer or redemption of a share in the capital of Oratel or OTUH or CC (including without limitation, an option, or right of pre-emption or conversion).

**5    THIRD PARTY APPROVALS**

The execution of this transaction is subject to the consent of ABC International Bank PLC on the transfer of the OTUH Shares to the Purchaser. On or before the Completion Date, the Seller and the Purchaser shall cooperate to procure the consent of ABC International Bank PLC on the transfer of the OTUH Shares as pledged to the Purchaser.

**6    CONFIDENTIALITY**

The Parties shall treat as strictly confidential all information received or obtained as a result of entering into or performing this Agreement. Nevertheless, the Parties may disclose information to a third party which would otherwise be confidential if and to the extent:

(a) required by the law of any relevant jurisdiction or for the purposes of any legal proceedings; or

(b) required by any securities exchange or by any regulatory or governmental body, a

01/03 2005 02:14 FAX ... HP LASERJET FAX
28 Feb 2005 12:13AM HP LASERJET FAX

(e)    prior written consent to the disclosure has been given by the other Party.

## 7    GOVERNING LAW AND DISPUTE RESOLUTION

### 7.1    Governing Law

This Agreement shall be governed by, and construed in all respects in accordance with English law.

### 7.2    Arbitration

All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with the said Rules (the "Arbitration Tribunal").

With n fifteen (15) days from their confirmation, the arbitrators appointed by the Parties shall jointly appoint the Chairman of the Arbitration Tribunal for confirmation by the International Court of Arbitration. Failing such nomination, the Chairman of the Arbitration Tribunal shall be appointed in accordance with the said Rules.

The arbitration proceedings shall be held in the city of London – England. The arbitration proceedings shall be conducted in English.

The final award shall be enforceable on a provisional basis, notwithstanding any recourse against it by a Party.

Any Party shall have the right to have recourse to and shall be bound by the Procedural Rules Reference Procedure of the International Chamber of Commerce in accordance with its Rules.

## 8    MISCELLANEOUS

### 8.1    Notices

All communications, notices and disclosures required or permitted by this SPA shall be in writing, and shall be given by hand delivery, by prepaid registered or certified mail (with return receipt requested), by an established overnight courier providing proof of delivery or by facsimile, addressed as follows, unless and until any Party notifies the other Party in accordance with this Article 6.1 of a change of address.

If to the Seller:
Mohamed Rachid, Managing Director
1191 Corniche El-Nile
9th Floor, Hilton Residence, World Trade Centre
Cairo, Egypt
Fax n°: (+202) 5744885

If to the Purchaser:
Legal I apartment
Nile Ci y Towers
Corniat El Nile, Ramlet Beaulac
Cairo

01/03 2005 TUE 01:18  (TX/RX NO 8534) @015
01/03 2005 TUE 02:48  FAX RX NO 8634  @001

7

Egy it
Fax  ℉. (+202) 46151G5

**8.2    Entire Agreement**

This SPA (together with all documents referred to in it or executed at or prior to Completion) const itutes the entire understanding between the Parties with respect to the Transaction and replaces and supersedes all prior agreements, arrangements or understandings regarding such subject matter.

**8.3    Amendment**

No variation of this SPA shall be effective unless made in writing and signed by the Parties.

**8.4    Partial Invalidity**

If part of this Agreement is or becomes invalid or non-binding, the Parties shall remain bound to the remaining part. The relevant Parties shall in that event replace the invalid or non-binding part by provisions which are valid and binding and the effect of which given invalid or non-binding part, is to the greatest extent possible similar to the invalid or non-binding part.

WHEREBY, this Agreement has been executed in three originals, in Cairo on this 27ᵗʰ  day of February 2005.

PALESTINE INVESTMENT FUND

ORASCOM TELECOM HOLDING S. AE.

_____
Mohamed Rachid
Managing Director

_____
Naguib Sawiris
Chairman and Chief Executive Officer

8.

## ANNEX 1

### TERRITORY OF THE BRITISH VIRGIN ISLANDS
### THE INTERNATIONAL BUSINESS COMPANIES ORDINANCE, CAP. 291

**ORATEL INTERNATIONAL INC.**
(the "Company")
An International Business Company

**SHARE TRANSFER**

We, Palestine Investment Fund, a fund organised and existing under the laws of the Palestinian Territories, for valuable consideration paid and received by us from Oratcom Telecom Holding S.A.E, an Egyptian company organised and existing under the laws of Egypt, (the "Transferee"), DO HEREBY TRANSFER TO the Transferee 122,200,000 (one hundred and twenty two million) full two hundred (and) ordinary shares of US$ 1 each registered in our name in the books of the above Company represented in share certificates No 16, 17, 18, 20 and 25.

AS WITNESS our hands the   day of February 2005.

Signed by a duly authorised representative for and on behalf of
Palestinian Investment Fund

Witness

9.

**ANNEX 2**

**TERRITORY OF THE BRITISH VIRGIN ISLANDS**
**THE INTERNATIONAL BUSINESS COMPANIES ORDINANCE, CAP. 291**

**ORASCOM TELECOM TUNISIA HOLDING LIMITED**
(the "Company")
An International Business Company

**SHARE TRANSFER**

We, Palestini a Investment Fund, a fund organized and existing under the laws of the Palestinian Territories, for valuable consideration paid and received by us from Orascom Telecom Holding S.A.E., an Egyptian company organised and existing under the laws of Egypt, (the "Transferee"), DO HEREBY TRANSFER TO the Transferee 22,025 (twenty two thousand and twenty five) ordinary shares of US$ 1 each registered in our name in the books of the above Company represented in share certificate No 1.

AS WITNESS our hands the  day of February 2005.

Signed by a duly authorised representative for and on behalf of
Palestinian Investment Fund

Witness

ANNEX 3

**TERRITORY OF THE BRITISH VIRGIN ISLANDS**
**TB 2 INTERNATIONAL BUSINESS COMPANIES ORDINANCE, CAP. 291**

**CARTHAGE CONSORTIUM LIMITED**
(the "Company")
An International Business Company

**SHARE TRANSFER**

We, Palestini n Investment Fund, a fund organized and existing under the laws of the Palestinian Territories, for valuable consideration paid and received by us from Orascom Telecom Holding S.A.E., an Egyptian company organised and existing under the laws of Egypt, (the "Transferee"), DO HEREBY TRANSFER TO the Transferee 22,025 (twenty two thousand and twenty five) ordinary shares of US$ 1 each registered in our name in the books of the above Company represented in share certificate No 1.

AS WITNESS our hands the  day of February 2005.

Signed by a duly authorised representative for and on behalf of
Palestinian Investment Fund

Witness:



**STRICTLY CONFIDENTIAL**

March 28, 2006

رسالة مرسلة من قبل السيد
حسب ساورس للهيئة تول
وقع الـ مع مليون دولار

<u>SENT VIA TELEFAX TO:</u> 00-9702-297-4148
Total Pages = 2
**CONFIRMATION VIA E-MAIL TO:** aalhasan@pif.ps

Dr. Mohamed Abdullah Mostafa
Chief Executive Officer
Palestine Investment Fund (PIF)
Ramallah, Palestine

Dear Dr. Mostafa:

See F
3 of a

Thank you for your March 25, 2006. Regarding your request for payment of the US$45 million amount of Orascom Telecom Algerie (OTA) dividends, and as discussed by our Legal Department with representatives of the PIF and the Palestinian Pension Fund (PPF) over the past several months, Orascom Telecom Holding SAE (OTH) is currently subject to a New York State court order that obligates it to make all payments due to the PIF and the PPF to the Estate of Ungar (the "Order").

As mentioned in telephone conversations with representatives of the PIF and PPF last year and earlier this year, OTH's contractual obligation to pay OTA dividends, or any other amounts, to the PIF and PPF would be deemed illegal in light of the Order. In the summer of 2005, OTH appointed outside counsel for purposes of vigorously challenging the validity of the Order both on jurisdictional and substantive grounds and has coordinated with PIF's outside counsel in setting forth a consistent challenge to the Order and other claims of the Estate.

Over the past ten months, OTH has been subject to perpetual and extremely burdensome challenges to their defense by the Estate of Ungar that have involved a substantial amount of time and effort. In addition, representatives of the Estate have sought to shamelessly tarnish me personally by baselessly associating me with so-called 'terrorists' in the press. Through our ongoing efforts, which I emphasize directly benefit PIF's position in the Estate of Ungar dispute, we are striving to invalidate the Order in order to be able to finalize the payments to PIF and PPF as soon as legally possible. However, OTH is in no position to directly or indirectly violate the Order until it is fully and finally invalidated.

Orascom Telecom Holding S.A.E. (Société Anonyme Egyptienne), with a Paid Capital: 1,100,000,000 LE.
(Subject to law No. 95 / 1992), CR. 365751 - Cairo
Nile City Towers, Cornish El Nile, Ramlet Beaulac, Cairo, Egypt
South Tower, 26th & 27th Floor
Tel : (202) 461 50 50/1
Fax :(202) 461 50 54/5
e-mail: info@otelecom.com



As mentioned by our Legal Department in previous discussions with Mr. Shqirat and Mr. Najjab, OTH will deduct the direct legal fees and expenses incurred in challenging the Order from the amounts payable to PIF and PPF in light of OTH's complete independence from the Estate of Ungar matter and the benefit to PIF and PPF from OTH's ongoing efforts.

In the meantime, we will certainly keep you apprised of all relevant developments regarding this matter.

Kind regards,



Naguib Sawiris
Chairman & CEO
Orascom Telecom Holding S.A.E.

Orascom Telecom Holding S.A.E. (Société Anonyme Egyptienne), with a Paid Capital: 1,100,000,000 I.E.
(Subject to law No. 95 / 1992), CR. 365751 - Cairo
Nile City Towers, Cornish El Nile, Ramlet Beaulac, Cairo, Egypt
South Tower, 26th & 27th Floor
Tel.:(202) 461 50 50/1
Fax:(202) 461 50 54/5
e-nail: info@otelecom.com





STRICTLY CONFIDENTIAL

May 28, 2006

<u>SENT VIA TELEFAX TO:</u> 00-9702-297-4148
Total Pages = <u>2</u>
CONFIRMATION VIA E-MAIL TO: aalhasan@pif.ps

Dr. Mohamed Abdullah Mostafa
Chief Executive Officer
Palestine Investment Fund (PIF)
Ramallah, Palestine

Re:  U.S. Law Preventing Orascom Telecom Holding S.A.E. from Presently
     Meeting its Obligations to the PIF

Dear Dr. Mostafa:

     I write in response to the May 21, 2006 fax of your internal counsel, which
attached an opinion letter dated May 11, 2006 from your U.S. counsel.

     I respectfully disagree with your U.S. counsel's conclusion that Orascom has no
legal basis for withholding the $45 million payment. Not only is Orascom legally barred
under U.S. law from making the transfer, the opinion letter itself seems to recognize as
much. *See, e.g.,* Op. Letter at 4 (recognizing that "[a] restraining notice served under §
5222 prohibits the restrained party from transferring any property to a judgment
debtor."); *id.* ("In this case, Plaintiffs have argued that the PIF (as an alter ego, shell or
alias of the PA) is a judgment debtor to Plaintiffs and that Orascom is prohibited from
transferring any property to the PIF "); *id.* at 6 n.4 ("Should Orascom choose to make the
deferred payment to the PIF during the pendency of the Orascom Litigation, Plaintiffs
will likely argue that Orascom is in contempt for violating the restraining notice that
seeks to prevent any transfers to the PIF."). While Orascom has challenged the legal
validity of the Restraining Notice imposed upon it, the fact of the matter is that Orascom
is legally bound to comply with the Notice until it is invalidated by the U.S. court.

     As your U.S. counsel notes in detail, Orascom has been aggressively litigating
against the Estate of Ungar in both New York state and federal court for almost one year.
Orascom expects to ultimately prevail, but until that time Orascom remains subject to the



Orascom Telecom Holding S.A.E., (Société Anonyme Egyptienne), with a Paid Capital: 1,100,000,000 LE.
(Subject to law No. 95 / 1992), CR. 365751 - Cairo
Nile City Towers, Cornish El Nile, Ramlet Beaulac, Cairo, Egypt
South Tower, 26th & 27th Floor
Tel :(202) 461 50 50/1
Fax:(202) 461 50 54/5
e-mail: info@otelecom.com

Restraining Notice, and therefore legally foreclosed from transferring the funds to the PIF.

Orascom appreciates the financial difficulties the Palestinian Authority is currently experiencing, and we have consistently desired to meet our obligation to pay the PIF the $45 million (less legal fees). Orascom cannot meet this obligation, however, until the U.S. litigation is fully resolved. Until the New York state court vacates the Restraining Notice, or the New York state and federal courts conclude that they lack personal jurisdiction over Orascom, Orascom is prohibited from violating the Restraining Notice by transferring the funds to the PIF.

Naturally, the PIF could choose to intervene in the U.S. litigation and in that manner directly advance its interests. Indeed, I understand that one of the U.S. judges has said that it would be appropriate for the PIF rather than Orascom to advance certain arguments, such as the argument that the PIF is not an alter ego of the Palestinian Authority (the judgment debtor).

Finally, I note that our U.S. litigation counsel has repeatedly received overtures from counsel for the Estate indicating that the Estate may be prepared to accept a fraction of the funds being restrained. These overtures suggest to us that the PIF may have alternatives available to it to resolve the situation short of bringing this protracted litigation to a final conclusion. Please advise if you would like the details surrounding these overtures.

In closing, I emphasize that Orascom is doing what it can to comply with its agreement with the PIF but, through no fault of its own, is at present legally precluded from forwarding the funds to the PIF.

Kind regards,



Amr El-Bayoumi
Vice President, Legal Affairs
Orascom Telecom Holding S.A.E.

Orascom Telecom Holding S.A.E. (Société Anonyme Égyptienne), with a Paid Capital: 1,100,000,000 LE.
(Subject to law No. 95 / 1992), CR: 266753 - Cairo
Nile City Towers, Corniche El Nile, Ramlet Beaulac, Cairo, Egypt
South Tower, 26th & 27th Floor
Tel: (202) 461 50 503
Fax: (202) 461 50 505
e-mail: info@orascom.com



STRICTLY CONFIDENTIAL

رسالة مرسلة من قبل
عمرو اليومي إلى الصندوق
لذات وضعي

June 12th, 2006

SENT VIA TELEFAX TO: 00-9702-297-4976
Total Pages = 2
CONFIRMATION VIA E-MAIL TO: aalhasan@pif.ps

Dr. Mohamed Abdullah Mostafa
Chief Executive Officer
Palestine Investment Fund (PIF)
Ramallah, Palestine

Re:    Legal Bar to Fund Transfer

Dear Mr. Moustafa:

        This will respond to your letter dated June 4, 2006 to Mr. Naguib Sawi is, which is the latest of a series of communications from PIF urging Orascom to defy the U.S. court's restraining notice.

        To confirm our prior communications to PIF, Orascom is legally barred under the restraining notice from transferring funds to PIF. The restraining notice, which was served upon Orascom officials while in the United States, expressly prohibits Orascom from transferring funds to PIF, identified by name and not merely implicit in the term "Palestinian Authority". We understand, but firmly disagree with, PIF's view that the restraining notice is not binding on Orascom. While Orascom is a company established under the laws of Egypt and Egyptian court or other authority has jurisdiction over the matter at issue, Orascom will not pay PIF unless and until the restraining notice is determined to be invalid by the U.S. courts. If Orascom were to violate the restraining order by transferring the funds, not only could Orascom be subject to contempt of court, but the judgment creditors could bring a separate action against Orascom that may render Orascom personally liable to the judgment creditors for the amount of the funds.

        Please be assured that Orascom continues to consider the funds as payable to PIF, pending resolution of the U.S. restraining notice litigation. If the restraining notice is invalidated, Orascom fully intends to pay the funds to PIF, from Orascom's receipt of its calendar year 2004 dividends as a shareholder in Orascom Telecom Algeria, unless the legal steps instituted by Orascom in litigating the matter in the U.S. courts.

Orascom Telecom Holding S.A.E.    Société Anonyme Egyptienne), with a Paid Capital: 1,100,000,000 L.E
ubject to Law No. 95 of 1995, CR.   C.P854 - Cairo
Nile City Towers, Cornich El Nil    Ramlet Beaulac, Cairo, Egypt
outh Tower, 26th & 27th Floor
el :(202) 461 50 50/1
x:(202) 461 50 54/5
mail: info@otelecom.com



We underst̲and PIF's position that it is not considered part of the Palest̲ian Authority organization. Orascom urges PIF to appear in the U.S. courts to establish the̲ ̲t, which coul̲ from court records that PIF was served with judicial process by one U.S. court but has failed to appear. Another U.S. court has stated that only PIF and not Orascom, has ̲egal standing to dispute the alleged link between PIF and the Palestinian Authority. This latter statement was made only recently, and PIF remains free to appear and present argument o̲ its own behalf. While we alert̲ you to this circumstance as a matter of courtesy, Orascom disclaims any responsibility to keep PIF abreast of developments in the U.S. litigation as PIF has its own counsel fully capabl̲ of doing so.

Finally, your closing threat "to undertake all necessary actions that PIF sees fit̲ ̲t̲ unproductive and, i̲ ̲deed, unappreciative of the significant efforts that Orascom̲ ̲has exerted to fulfill its contractua̲ obligations to PIF. Not only has Orascom mounted a strong defense against the restraining notic̲ for the benefit of PIF, Orascom and its officers and even those who have business with Oras̲com or its affiliates have been subject to considerable harassment and inconvenience in th̲ process. Should PIF act against Orascom, Orascom̲ will ̲ of course̲ have̲ to consider the advisability of continuing its legal efforts in the United States t̲ permit itself to pa̲ the funds to PIF.

Sincerely,

Amr El Bayoumi
Vice President, Legal Affairs
Orascom Telecom Holding S.A.E.

scom Telecom Holding S.A.E.    Société Anonyme Égyptienne), with a Paid Capital: 1,100,000,000 LE
̲ged to law No. 95 / 1992, CR.̲ ̲ ̲751 . Cairo
h̲ City Towers, Cornish El Nil    Ramlet Beaulac, Cairo, Egypt
h̲ Tower, 26ʰ & 27ʰ Floor
(202) 461 50 50-1
(202) 461 50 54/5
il: info@otelecom.com