UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THE ESTATE OF YARON UNGAR by and through its Administrator, DAVID STRACHMAN; DVIR UNGAR, minor, by his guardians and next friends, YISHAI UNGAR, minor, by his guardians and next friends, PROFESSOR MEIR UNGAR, JUDITH UNGAR, individually and in their capacity as legal guardians of Plaintiffs DVIR UNGAR and YISHAI UNGAR; RABBI URI DASBERG, and JUDITH DASBERG, in their capacity as legal guardians of Plaintiffs DVIR UNGAR and YISHAI UNGAR; AMICHAI UNGAR; DAFNA UNGAR; and MICHAL COHEN,

        Plaintiffs / Judgment-Creditors,

      -against-

ORASCOM TELECOM HOLDING S.A.E.

        Defendant / Garnishee.
------------------------------------------------------------------------X

Civil Action No. 07 CV 2572 (CM) (LMS)

**DECLARATION OF PLAINTIFFS' EXPERT <u>GEORGE H. GREGOR</u>**

      **GEORGE H. GREGOR**, pursuant to 28 U.S.C. § 1746, declares and states as follows subject to the penalties for perjury of the United States of America:

      1.    My *curriculum vitae* is attached and highlights my qualifications in the field of international capital markets. For more than thirty years I have been employed in various positions with several large international financial institutions, including Citibank, Bank of America, Nomura, and Deutsche Bank, and I have held senior management positions that have included comprehensive duties in both debt

and equity activities in international capital markets worldwide. These duties have involved me in many international securities innovations from Latin America to Asia. I have acquired a very detailed understanding of both international depositary receipts and global bonds from the perspective of corporate trust servicers of such forms. I am co-Founder and presently Managing Partner of Global Capital Service Group, Ltd., 67 Wall Street, New York, NY 10005.

2. I submit this declaration to provide the Court with my opinion, based on my extensive knowledge of the workings of the international capital markets, as to the material and substantial contacts with New York which have been had by Orascom Telecom Holding S.A.E. ("Orascom") by reason of Orascom's capital programs.

3. In formulating my opinion, I have reviewed the following documents:

Exhibit 1    -    REDACTED REDACTED REDACTED
Exhibit 2    -    REDACTED REDACTED REDACTED
Exhibit 3    -    REDACTED REDACTED REDACTED REDACTED
Exhibit 4    -    REDACTED REDACTED REDACTED
Exhibit 5    -    REDACTED REDACTED REDACTED
Exhibit 6    -    REDACTED REDACTED REDACTED REDACTED
Exhibit 7    -    REDACTED REDACTED
Exhibit 8    -    Orascom Offering Plan for $750 million of Senior Notes (2007)

Exhibit 9    -    REDACTED REDACTED REDACTED REDACTED REDACTED

Exhibit 10   -    Citibank road show itinerary

Exhibit 11   -    REDACTED REDACTED

Exhibit 12   -    REDACTED REDACTED REDACTED REDACTED

Exhibit 13   -    REDACTED REDACTED REDACTED REDACTED

Exhibit 14   -    REDACTED REDACTED REDACTED REDACTED

Exhibit 15   -    List of Orascom institutional owners, http://www.adrbny.com/dr_ownership.jsp?cusip=68554W205 (last visited Aug. 14, 2007)

Exhibit 16   -    REDACTED REDACTED REDACTED REDACTED REDACTED

Exhibit 17   -    REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED

Exhibit 18   -    Records produced by the 21 Club for road show lunch meeting on January 31, 2007 between Orascom officers and representatives of major institutional investors.

4.   Additionally, in formulating my opinion, I have conducted independent research and relied on my professional knowledge of the securities industry, most notably in the area of depositary receipts and international debt issues. In particular, in my senior positions with Citibank, Nomura and Deutsche Bank, I was directly involved in the field of American, Global, and International Depositary

Receipts, as well as with various forms of international and Eurobond issues, areas of knowledge that are directly relevant to the issues presented herein.

5. According to Orascom's own public disclosures, such as its annual report, and the testimony of its officers in this litigation, Orascom is merely a holding company, and the core business of Orascom is raising capital; the underlying cellular telephone business is conducted by Orascom's subsidiaries, not by Orascom. In this declaration I will show that a significant portion of Orascom's business of raising capital is conducted in, and tied to, New York.

6. Based on my review of the salient documents relating to Orascom's capital activities, I have concluded that, during the period years 2000 and 2007, Orascom engaged in continuous and substantial activities, involving hundreds of millions of dollars of capital, comprising a significant portion of Orascom's global activities, in New York. During the timeframe cited, Orascom issued several international equity programs utilizing the "Global Depositary Receipt" form, as to equity, and Global Bonds, as to debt, and raised significant debt and equity capital from sources that included large New York-based institutional investors.

7. These activities repeatedly involved or invoked United States securities laws, and took advantage of New York markets and capital available from institutions concentrated in New York. REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED

REDACTED   REDACTED   REDACTED   REDACTED   REDACTED   REDACTED   REDACTED

REDACTED   REDACTED   REDACTED   REDACTED   REDACTED   REDACTED

### A.     Orascom's New York GDR Program

8.      By issuing GDRs and bonds with the services of The Bank of New York, Orascom enabled itself to transcend the limited capital-raising capacity of its native Egyptian stock market, and obtained access to world-class sources of capital that have enabled Orascom to expand its business exponentially. Orascom's activities in New York are thus Orascom's "main event," not just a side show.

9.      There are several forms of securities derivative instruments that fall generally into the category of "depositary receipts." These include American Depositary Receipts ("ADRs"),[1] which are essentially the same as Global Depositary Receipts ("GDRs")[2]; International Depositary Receipts ("IDRs"); Restricted American Depositary

---

[1] The Bank of New York's website defines an ADR as:
A depositary receipt is a negotiable certificate that usually represents a foreign company's publicly traded equity or debt. Depositary Receipts are created when a broker purchases the company's shares on the home stock market and delivers them to the depositary's local custodian bank, which then instructs the depositary bank to issue Depositary Receipts. Depositary Receipts may trade freely, just like any other security, either on an exchange or in the over-the-counter market. Also known as GDRs (Global Depositary Receipts.)

http://www.adrbny.com/dr_edu_glossary.jsp (last visited Aug. 12, 2007).

[2] The Bank of New York's website defines a GDR as:

*(Footnote continued on the next page.)*

Receipts (sometimes known as "RADRs" but generally referring to private placements in the United States under Rule 144A); and Transferable Custody Receipts ("TCRs") or "reverse ADRs" such as the CEDEARs in Argentina and VEMEX in Mexico.

      10.    An ADR / GDR that avoids registration with the Securities and Exchange Commission ("SEC") and listing in the United States can be done in the private placement market, usually targeted at "QIBs" (qualified institutional buyers), under the securities law exemption available under SEC Rule 144A for sales to QIBs. In addition, issuers may tap public markets under the SEC Regulation S exemption, but sales are confined to investors outside the United States. Regulation S and Rule 144A ADRs are sometimes combined in "unitary" structures, which is known in market jargon as "side-by-side."

---

Term used to describe an instrument primarily used to raise dollar-denominated capital either in the United States or European private markets. The name GDR actually is a generic term describing Rule 144A or Reg S receipt structures deployed to raise capital either in dollars and/or euros. (If the currency is euros, the instrument is often called an EDR, or European Depositary Receipt.) For 144A depositary receipts, settlement is in DTC, while Reg S depositary receipts may be settled in both Euroclear and Clearstream.

http://www.adrbny.com/dr_edu_glossary.jsp (last visited Aug. 12, 2007).

11. In the case of Orascom, we see a history of three depositary receipt events[3] covering equity securities:

| Date of issue | Market | CUSIP # | Ticker Symbol |
| --- | --- | --- | --- |
| 7/12/2000 | REG S | 68554W205 | OTLD |
| 7/12/2000 | 144A | 68554W106 | ORASYP |
| 8/4/2005 | REG S SER B | 68554W403 | - |

12. The 2000 issues were "side-by-side," combining non-United States public investors with a United States issue confined to the QIBs market under Rule 144A.

13. In order to qualify as a "QIB," an institution is required to "in the aggregate own[] and invest[] on a discretionary basis at least $100 million in securities of issuers that are not affiliated with the entity." SEC Rule 144A(7)(a). Thus, QIB's are hedge funds, insurance companies, banks, investment bankers, etc., and they buy large-scale positions (i.e., typically in the millions of dollars) of whatever equity or debt they invest in.

14. In the case of Orascom, the top 15 institutional holders of the Regulation S GDR's hold positions ranging from $265 million down to $26 million (Exhibit 15, List of Orascom institutional owners, http://www.adrbny.com/dr_ownership.jsp?cusip=68554W205 (last visited Aug. 14, 2007). As we see, most of the top

---

[3] I refer here to the programs I was able to identify from review of the public record. The plaintiffs have not been permitted to take discovery of Orascom. There may be additional programs.

15 institutional investors holding the Orascom GDRs are either based in New York or have major offices in New York (Capital Research & Management Co., ING Investment Management Advisors, B.V., Morgan Stanley Asset Management, Barclays Global Investors, N.A., Vanguard Group, Inc., JP Morgan Asset Management (UK), Ltd., MFS Investment Management, UBS Global Asset Management, Fidelity Mangement & Research, HSBC Investments (UK), Ltd., Harding, Loevner Management, LP, Goldman Sachs Asset Management International, Criterion Capital Management, LLC).

15. Due to regulations, The Bank of New York's website does not list the Rule 144A institutional owners. However, it is highly likely that most, if not all the 144A GDRs (the legal term is "American Depositary Shares," i.e., represented by "American Depositary Receipts") were placed with New York institutions, as the ability to place shares with United States institutions is the primary reason why Orascom would create a Rule 144A program, rather than a Regulation S program alone. The Rule 144A GDS's were admitted to trading in PORTAL, a New York based trading platform for private placements run by NASDAQ. It is likely that all the Rule 144A positions were traded and are traded through PORTAL.

16. REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED

17. REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED

---

[4] The depositary agent of Orascom is The Bank of New York, which administers its depositary receipt business from New York. New York is also the center of The Bank of New York's marketing and operations activity for depositary receipts and its corporate trust business in general.

*(Footnote continued on the next page.)*

19. REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED

20. By setting up a GDR program in New York in this manner, Orascom opens up for itself a world of investors. Few large international investors are prepared to risk investing in stock traded only in Egypt, denominated in Egyptian currency, with only the Egyptian legal system to resolve disputes. In contrast, the New York-based GDR programs allow Orascom to raise capital by selling its equity on major international exchanges in United States dollar denominations, with the investors having recourse against Orascom through the state and federal courts in New York. This is all the more significant since institutional investors in New York ("Wall Street") are made most comfortable investing in Orascom by the knowledge that their investment is made via the venerable Bank of New York, governed by United States and New York law, with access to courts in New York.

21.  In point of fact, Orascom senior officers, including CEO Naguib Sawiris, have come to New York on numerous occasions to promote investment in Orascom via the GDR program by conducting periodic "road shows" — presentations to institutional investors — which are intended to "get shareholders interested in the company so they would buy the stock." (Exhibit 12, Sawiris depo., p. 57).

22.  REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED

23.  Once the GDR programs were established, the next step for Orascom was to promote the GDR's. As is typical, Orascom worked together with investment banks that promoted the sale of Orascom's GDR's to large institutional investors (QIB's). This promotion included conducting numerous road shows, in which Orascom officers visited New York to meet with potential QIB's and furnish information about Orascom. One such road show conducted together with Citigroup is evidenced by an itinerary (Exhibit 10) that had Orascom representatives meeting in New York with a series of large institutional investors.

**B.      Orascom's New York Bond Program**

24. In February 2007 Orascom caused $750 million in debt securities to be issued to raise capital for its operations. (Exhibits 7, 8). These debt securities took the form of "bifurcated global bonds," in reliance on United States securities law exemptions available under Rule 144A and Regulation S.

25. As with the equity GDR's, once the bond program was established Orascom's next step was to promote the sale of the bonds. To this end, Orascom conducted road shows, especially including in New York. One such road show featured a group lunch at the 21 Club for a group of large institutional investors (Exhibit 18; Exhibit 14, Deposition testimony of Emad Farid, pp. 32-49; Exhibit 13, Deposition testimony of Aldo Mareuse, pp. 118-31).

26. The initial sale of the bonds was not the end, but only the beginning, of Orascom's involvement with New York in respect to these bonds:

27. REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED

28. The entire bond issue is represented by two "master" notes, or "global notes" each (one for the Rule 144A issue and one for the Regulation S issue) (Exhibit 8, Offering Plan p. 154) deposited in custody with DTC under its nominee name, Cede & Co., which facilitates trading of these Orascom bonds in "decertificated form" as "book entries."

29. Thus, when investors in New York or anywhere in the world purchase Orascom bonds, what they are really purchasing is a piece of the master note located in New York.

30. REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED

31. REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED

32. REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED REDACTED

33. As with the equity issues discussed above, Orascom's decision to issue bonds via The Bank of New York under Regulation S and Rule 144A, rather than just issuing Egyptian bonds, allowed Orascom to tap into capital available from world-class institutional investors in New York, which would not otherwise have been available to Orascom. As it turned out, this bond issue was so successful that Orascom managed to sell $750 million of these bonds, after initially only planning an issue of $500 million (Exhibit Exhibit 13, p. 127). Since raising capital is Orascom's core function, it can be said that a very significant portion of Orascom's business — the issuance, sale, and management of these bonds — took place in New York.

Dated: New York, New York
August 15, 2007

_____
GEORGE H. GREGOR