UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X

ESTATE OF YARON UNGAR, et al.,

        Plaintiffs-Judgment Creditors,

  -against-

ORASCOM TELECOM HOLDING S.A.E.,

        Defendant-Garnishee.

-------------------------------------------------------------------------- X

Docket no.
07-CV-2572 (CM)

## PLAINTIFFS – JUDGMENT CREDITORS

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR

## MOTION IN THE ALTERNATIVE FOR JURISDICTIONAL DISCOVERY

JAROSLAWICZ & JAROS
*Attorneys for the Plaintiffs*
225 Broadway, 24th floor
New York, New York 10007
(212) 227-2780

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X

ESTATE OF YARON UNGAR, et al.,

        Plaintiffs-Judgment Creditors,

  -against-

ORASCOM TELECOM HOLDING S.A.E.,

        Defendant-Garnishee.

-------------------------------------------------------------------------- X

Docket no. 07-CV-2572 (CM)

# PLAINTIFFS – JUDGMENT CREDITORS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION IN THE ALTERNATIVE FOR JURISDICTIONAL DISCOVERY

## INTRODUCTION

After two years of claiming exactly the contrary, Orascom now concedes, as it must in light of *Ehrenfeld v. Mahfouz*, 489 F.3d 542 (2d Cir. 2007), that a *prima facie* showing is **not** a condition for granting jurisdictional discovery in this Circuit. *See* Orascom's Combined (1) Reply Memorandum of Law in Support of Its Motion to Dismiss the First Amended Complaint and (2) Opposition to Plaintiffs' Cross-Motion for Jurisdictional Discovery ("Orascom Memo") at 17-18.

Notably, even prior to *Ehrenfeld*, this Court held that:

> [I]f plaintiff has not pleaded a *prima facie* showing of personal jurisdiction, a court may order limited discovery targeted at the missing jurisdictional elements, if plaintiff has shown that such an exercise would serve *to fill any holes* in its showing.

*Smit v. Isiklar Holding A.S.*, 354 F.Supp.2d 260, 263 (S.D.N.Y. 2005) (emphasis in the original) (quotations omitted).

This Court's holding in *Smit* is all the more valid today, after the Court of Appeals clarified in *Ehrenfeld* that no *prima facie* showing is required to begin with.

This Court also recently emphasized the crucial importance of jurisdictional discovery to ensuring that litigation is the truth-finding process it is meant to be:

> [I]t is up to zealous … counsel to take timely jurisdictional discovery, so that the Court **has accurate information on which to base its decision**."

*Hatfill v. Foster*, 415 F.Supp.2d 353, 369 (S.D.N.Y. 2006).

The Ungars have been zealously seeking jurisdictional discovery for two years now, from the very moment that their turnover proceedings were commenced. In its decision of November 2005, the Court denied the Ungars that discovery, on the basis of the extremely partial record which plaintiffs were able to cobble together at that point from public sources, and in light of the apparent holding in *Jazini* that a *prima facie* showing is required.

Since then, not only is the factual record of Orascom's activities vastly greater (including numerous activities which occurred only *after* November 2005), but the Second Circuit has clarified that *Jazini* does **not** require a prima facie showing.

This Court should have "accurate information on which to base its decision" (*Hatfill, supra.*) regarding Orascom's jurisdictional contacts before ruling on the motion to dismiss.[1]

At this point, it is indisputable that the factual picture is incomplete. It is also patently obvious that Orascom is sitting on relevant documents and evidence that would complete that picture: if Orascom had no jurisdictional facts to hide, it would not have spent two years and hundreds of thousands of dollars in attorneys fees fighting the Ungars' efforts to obtain discovery from Orascom itself.

On the contrary, if there really were no further jurisdictional facts out there, Orascom would *welcome* such discovery in order to expedite this Court's decision on the jurisdictional issue.

Instead, precisely because it does not want the Court to rule on the basis of the full jurisdictional facts and to have "accurate information on which to base its decision" (*Hatfill, supra.*),

Orascom tenaciously opposes the Ungars' motion for jurisdictional discovery. (Orascom Memo at 16-20).

Orascom argues that jurisdictional discovery would be pointless, because none of Orascom's New York activities relied upon by the Ungars is a cognizable jurisdictional contact under New York law (Orascom Memo at 17), and because the information which Orascom's officers admittedly and unlawfully withheld during their depositions "is immaterial to this Court's jurisdictional analysis." *Id*. at 19.

Orascom's assertions are baseless. On the contrary, as shown below, Orascom's New York activities are all fully cognizable and highly salient jurisdictional contacts under CPLR § 301, and the motion for jurisdictional discovery should be granted if the Court finds that the Ungars have not yet made the prima facie showing necessary to defeat Orascom's motion.

### I.

### SOLICITATION

**A.     Meetings to Solicit Investments**

As part of their showing that Orascom satisfies the "solicitation" prong of the "solicitation-plus" formula, the Ungars demonstrated that during the several years immediately preceding the filing of the instant action, Orascom's top officers conducted literally hundreds of meetings in New York which were aimed at persuading major institutional investors to purchase Orascom's stock in Egypt and/or Orascom's New York GDRs and/or Orascom's New York bond. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plaintiffs Memo") at 18-20.[2]

---

[1] Assuming that the Ungars have not already made the *prima facie* showing necessary to defeat the motion, which they respectfully believe they have.

[2] The Ungars assert that Orascom's solicitation of New York investors for its Egyptian stock, its GDRs and its bond constitutes "solicitation" within the meaning of § 301 completely ***irrespectively and independently*** of the fact that the GDR and bond programs happen to be located in New York. (Plaintiffs' Memo at 18-20). Solicitation of New York investors for stocks and bonds is solicitation under § 301, whether the stocks and bonds are located in New York or in Timbuktu.

*(continued next page)*

The Ungars seek jurisdictional discovery regarding the percentage of the Egyptian stock and the New York bond purchased and held by New York investors, and about additional such solicitation trips by Orascom offices, all of which information Orascom's officers confirmed exist and is readily available. (*See* Plaintiffs' Memo at 19-20, 25-27).

Orascom freely admits that the percentage of a defendant's business solicited in New York is normally a factor relevant to jurisdictional analysis, but asserts that that information is irrelevant here—and thus no discovery should be granted—because solicitation of investors is not cognizable as "solicitation" under § 301 of the CPLR. (Orascom Memo at 2-8).

This argument fails because it ignores the crystal-clear holding of the Second Circuit in *Wiwa v. Royal Dutch Petroleum Co.*, that **any** activity in New York by Orascom and its agents intended to benefit Orascom constitutes solicitation within the meaning of § 301:

> [A] finding of "solicitation" in the jurisdictional context does not necessarily require "solicitation" in the sense of an offer of contract. Rather, the central question is <u>whether the defendant (or its agent) behaved in such a way so as to encourage others to spend money (or otherwise act) in a manner that would benefit the defendant</u>.

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 98 (2d Cir. 2000) (emphasis added).

Obviously, attempting to convince large institutional investors to buy Orascom's stock, GDR and bonds constitutes "behav[ing] in such a way so as to encourage others to spend money (or otherwise act) in a manner that would benefit" Orascom.

Therefore, the hundreds of meetings with current or potential major institutional investors held by Orascom in New York in the three years prior to the filing of this action unquestionably constitute "solicitation" under *Wiwa*.[3]

---

Separately, the Ungars point to the ***presence*** of the GDR and bond programs in New York as a "plus" factor. (*Id*. at 21-22).

[3] Indeed, Orascom is acutely aware that *Wiwa* collapses its entire jurisdictional argument in this case, and so desperately—and frivolously—tries to argue that *Wiwa* is only dicta. (Orascom Memo at 5).

Orascom cites to a number of cases which purportedly held that activities related to equity or debt financing are not cognizable contacts under § 301. (Orascom Memo at 2-3, 5). These cases are of no assistance at all to Orascom here, for multiple reasons:

<u>First</u>, notwithstanding Orascom's skill at crafting creative and self-serving tail citations bearing little relation to the actual substance of the case, the decisions cited by Orascom do not hold that the financing activities of the respective defendants in those cases did not "count" as a jurisdictional contact, but rather that, upon the specific facts of the cases, those contacts were not sufficient.

<u>Second</u>, most of the decisions cited by Orascom deal ***not*** with the question of whether solicitation of equity or debt investors in New York constitutes "solicitation" under § 301, but with the completely separate—and here irrelevant—questions of whether the very existence of an ADR/GDR program in New York or the one-time issuance of stock or a bond in New York, is sufficient to create jurisdiction.

For example in one of the lead cases relied upon by Orascom, *Freeplay Music, Inc. v. Cox Radio, Inc.*, the court held that defendant's "stock buy-back venture is <u>limited in purpose and temporary in duration</u> such that it does not create legal presence in New York." *Freeplay Music, Inc.*, 2005 WL 1500896 at *4 (S.D.N.Y. 2005) (emphasis added). How this case could possibly be relevant to Orascom's on-going solicitation of investors for its permanent New York GDR program and its long-term New York bond, only Orascom knows. On the contrary, the clear import of *Freeplay Music* is that where, as here, the financing activities are continuous and systematic, they are sufficient to create jurisdiction.

Indeed, crucially, ***none*** of the cases cited by Orascom deals with the extraordinary facts present here, wherein the senior officers of the defendant repeatedly came to New York to conduct ***hundreds*** of meetings to solicit investment from major institutional investors for ***three different*** equity and debt investment programs (Egyptian stocks, GDRs, and the bond).

Rather, in the cases cited by Orascom the defendants themselves had no or virtually no involvement in the marketing of their stocks, bonds and ADR/GDR's. Here, in complete contrast,

-5-

Orascom itself aggressively and systematically solicits investors in New York. The cases Orascom seeks to rely on are therefore inapposite.

<u>Third</u>, to the extent, if any, that the cases cited by Orascom held that solicitation of investors does not constitute "solicitation" within the meaning of § 301 (and none of the cases appear to so hold), such a holding would be in direct conflict with *Wiwa*, and thus would not be good law and must be disregarded.

<u>Fourth</u>, quite aside from *Wiwa* itself (which expressly held that stock market activities *are* jurisdictional contacts, *see* 226 F.3d at 97) there are numerous other New York cases holding that activities in New York relating to equity and debt investment are cognizable jurisdictional contacts. For example, in *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F.Supp.2d 289(S.D.N.Y. 2003) this Court held that:

> [T]he fact that [defendant] Talisman is listed on the New York Stock Exchange is a factor militating in favor of conferring jurisdiction on this Court.

Presbyterian Church of Sudan, 244 F.Supp.2d at 330.

Likewise, in *Omni Consulting Group, Inc. v. Marina Consulting, Inc.*, 2004 WL 1946456 (W.D.N.Y. 2004), the court found that a Texas company that "does not maintain facilities, offices or employees in New York State" was nonetheless subject to jurisdiction in New York under CPLR § 301 because, *inter alia*, the company:

> [U]tilized various New York companies, including Depository Trust Company and Chase Manhattan Bank, to assist with the issuance of $200 million in corporate notes in 2001 and $100 million in corporate notes in 2003. Pursuant to the prospectus, all principal, premium and interest payments were payable at the office of the Paying Agent and Registrar within New York.

*Omni Consulting*, 2004 WL 1946456 at *2-3.

Similarly, in *Kingsepp v. Wesleyan University*, 763 F. Supp. 22 (S.D.N.Y. 1991), this court found that Dartmouth College is subject to jurisdiction under § 301 since, *inter alia*, "Dartmouth has

issued bonds in New York through Goldman Sachs on at least four separate occasions." *Id*. at 27. *See also e.g. Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis*, 2006 WL 2289847 at * 9-10 (S.D.N.Y. 2006) (The "solicitation of investors" in New York constitutes "doing business" within CPLR § 301).

Clearly, then, even prior to *Wiwa*, New York law recognized activities aimed at raising investment capital as valid jurisdictional contacts.

Orascom also argues that its solicitation of investment in New York is not "systematic" and "continuous" because it did not "make any sales or generate any sales revenue, or provide services any services to customers in New York" in the course of the hundreds of investment solicitation meetings it held in New York over the last three years, and because the "vast majority" of its road shows are purportedly "non-deal" road shows. *Id*. at 7, 11.

Here, too, Orascom misses (or pretends to miss) the entire point of *Wiwa*. Orascom's road shows and conferences in New York are intended to solicit investment, i.e. "to encourage others to spend money (or otherwise act) in a manner that would benefit" Orascom. *Wiwa*, 226 F.3d at 98. Since that is the undisputed purpose of those road shows and conferences (*see* Ex. 12, p. 57; Ex.13, pp. 56, 83, 86, 119 *et seq*.) it makes no difference whatsoever that the "benefit" derived by Orascom is not "sales" or "sales revenue" but investment capital.

For the same reason, the "deal"/"non-deal" dichotomy which Orascom seeks to conjure up is a false one: since Orascom's officers have admitted that the purpose of all the conferences and road shows is to keep and win investors, it makes no difference whether a "deal" was cut during any conference or road show. "[A] finding of 'solicitation' in the jurisdictional context does not necessarily require 'solicitation' in the sense of an offer of contract." *Wiwa*, 226 F.3d at 98.

Thus, the conferences and road shows to solicit investment clearly constitute "solicitation" under § 301, and in order to complete the jurisdictional analysis Orascom should therefore be directed to reveal what percentage of its Egyptian stock and what percentage of its bond were sold to and are owned by New York investors, as the Ungars requested in their motion papers. (*See* Plaintiffs' Memo at 19-20, 25-27).

Moreover, any doubt that these New York ownership percentages are high has now been dispelled by the declarations of Aldo Mareuse and Emad Farid filed in support of Orascom's opposition papers. The doubt has been dispelled not by what these declarations say, but by what they do *not* say: since Orascom went to the trouble of preparing and filing these declarations, it is pellucid that if the New York ownership percentages were low, Orascom's declarants would have said so. What could have been easier than to insert a sentence clarifying that the percentages are negligible?

The Court should treat the thundering silence of Orascom's declarants as an admission that the New York ownership percentages are high, or at the very least as further grounds to direct Orascom to provide discovery on this issue.

Next, Orascom argues (somewhat half-heartedly) that its solicitation in New York is not "systematic" and "continuous" because it is purportedly narrower in scope than that of the defendant in *Indemnity Ins. Co. of North America v. K-Line America, Inc.* 2007 WL 1732435 (S.D.N.Y. 2007), which was found not to be doing business under § 301. (Orascom Memo at 7-8).

This argument fails, in the first place, because the defendant in *Indemnity* – unlike Orascom – conducted little or no solicitation of its own in New York, relying instead on third-party agents and salespeople. *Id.* 5-7. The facts of *Indemnity* are thus completely inapposite to the facts of this case.

More fundamentally, this argument misapprehends the nature of jurisdictional analysis under § 301 of the CPLR:

> The test is *fact-sensitive* and *pragmatic* and requires a court to 'analyze a defendant's connections to the forum state *not for the sake of contact-counting*, but rather for whether such contacts show a continuous, permanent and substantial activity in New York.'"

*Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis*, 2006 WL 2289847 at *9 (S.D.N.Y. 2006) (quoting *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1991) (emphasis added).

Thus, Orascom's attempt to count and compare contacts from one case to the next is exactly what the Court is *not* supposed to do here.

-8-

In fact, it is easy to find cases in which jurisdiction was upheld under § 301, in which the defendant had far, far *fewer* contacts with New York than either Orascom or the defendant in *Indemnity*. *See e.g. Thompson Med. Co. v. Nat'l Ctr. Of Nutrition, Inc.*, 718 F. Supp. 252, 253 (S.D.N.Y. 1989); *Katz Communications v. Evening News Ass'n*, 705 F.2d 20 (2d Cir. 1983); *Ally & Gargano, Inc. v. Comprehensive Accounting Corp.*, 603 F.Supp. 923 (S.D.N.Y. 1985); *Daou v. Early Advantage, LLC*, 410 F. Supp. 2d 82 (N.D.N.Y. 2006); *Huangyan Import & Export Corp. v. Nature's Farm Prods., Inc.*, 2000 WL 1224814, at *5 (S.D.N.Y. Aug. 29, 2000); *Georgia-Pacific Corp. v. Multimark's Int'l Corp.*, 265 A.D.2d 109, 111, 706 N.Y.S.2d 82, 83 (1st Dep't 2000); *Kingsepp v. Wesleyan University*, 763 F. Supp. 22 (S.D.N.Y. 1991); *Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis*, 2006 WL 2289847 at *9 (S.D.N.Y. 2006).

Indeed, any attempt to compare cases under § 301 by counting and comparing contacts, as Orascom is urging, will quickly lead to the mistaken conclusion that there are no set rules at all in this area of law: some defendants are found to be doing business based on what appear to be very few contacts, and other defendants who have extensive activities in New York are found to be not subject to jurisdiction.

The reason for this phenomenon is simple: because the "doing business" standard under § 301 is "fact-sensitive and pragmatic" (*Thurn und Taxis, id.*) the courts identify when a defendant is "doing business" in New York in the same way Justice Stewart identified obscenity: they "know it when they see it."

Finally, Orascom argues that raising investment is not really one of its core functions. (Orascom Memo at 4-5). In support of this claim—which of course contradicts the explicit testimony of its officers (*see* Plaintiffs' Memo at 17) during their depositions—Orascom submits the self-serving declarations of Messrs. Mareuse and Faird, which assert, baldly and *ipse dixit*, that soliciting investments is not one of Orascom's main corporate purposes.

Needless to say, the Court should prefer the frank real-time testimony of Orascom's officers, to the *post hoc* declarations drafted by Orascom's lawyers for the purpose of this motion.

Accordingly, Orascom should be required to provide discovery regarding its solicitation of investments in New York, including the percentage of its Egyptian stock and New York

bond held by New York owners, as well as the details of any other such meetings which have not come to light.

### B. Conference Calls With New York Investors

As a further example of Orascom's "solicitation" activities in New York, the Ungars showed that in every fiscal quarter and at the end of each year, like clockwork, Orascom invites its current and potential institutional investors, including what Mr. Sawiris termed the "major financial institutions" in New York, to participate in conference calls. (*See* Plaintiffs' Memo at 20-21).

The Ungars seek jurisdictional discovery to determine how many New York institutions are invited to participate in these calls, and how many actually do so. (Plaintiffs' Memo at 20 n. 14; 26).

Orascom argues that, like the meetings in New York with current or potential investors, these conference calls do not constitute solicitation of business, and that therefore "it is immaterial how may invitees and participants are from New York." (Orascom Memo at 17).

This argument is baseless. As discussed in Plaintiffs' Memo (at 20), Mr. Sawiris has confirmed that the purpose of these calls is to maintain and increase investment in Orascom. Indeed, Orascom's Memo admits that an investor might potentially purchase Orascom stock as the result of these conference calls. *Id*. at 11. Accordingly, these calls are unquestionably "solicitation" as defined in *Wiwa*, since the purpose of the calls is to induce others to act in a manner beneficial to Orascom.

Nor is there any question that solicitation by telephone constitutes solicitation under § 301. *See Purdue Pharma L.P. v. Impax Laboratories, Inc.*, 2003 WL 22070549 at *2 (S.D.N.Y. 2003) (finding that defendant solicited business "via telephone, e-mail and face-to-face communication").

Accordingly, Orascom should be directed to provide discovery regarding the New York institutional investors invited to participate, and actually participating, in these calls.

### C. Solicitation by Email

A third (and obviously far less significant) type of solicitation conducted by Orascom in New York its email information service, which delivers information about Orascom to potential

investors on an average of once a week. (Plaintiffs' Memo at 21). Plaintiffs seek to discover the number of New Yorkers receiving these e-mailings. *Id*. Orascom responds by focusing on the fact that the email service is available through Orascom's website, and arguing at length that interactive websites do not give rise to jurisdiction, and that discovery therefore would serve no purpose. (Orascom Memo at 14-15).

Orascom has once again missed the point. The fact that the email service is available through Orascom's website is of no moment, and all the case law cited by Orascom in respect to websites is thus irrelevant.

The salient issue is that Orascom sends emails to persons in New York in order to encourage them to invest in Orascom, and under *Wiwa* such activity constitutes solicitation. As noted, solicitation may be done by email. *Purdue Pharma*, 2003 WL 22070549 at *2 (finding that defendant solicited business "via telephone, e-mail and face-to-face communication").

Therefore, Orascom should be required to reveal the extent of its emailings to New York.

## II.

## PLUS FACTORS

The Ungars assert that the "plus" prong of the "solicitation-plus" formula is satisfied by (a) Orascom's New York GDR program; (b) Orascom's New York bond program; (c) Orascom's contract with Warner Music; (d) Mr. Sawiris' Stock Exchange committee membership; and (e) Orascom's repeated submission to New York jurisdiction and law and appointment of New York agents for service. (Plaintiffs' Memo at 21-25).

Orascom claims that jurisdictional discovery would be pointless, because none of these contacts constitute "plus" factors. (Orascom Memo at 2). Orascom's arguments in this respect can be quickly disposed of:

First, Orascom's claim that stock and bond programs are ***never*** cognizable contacts under § 301 was refuted *supra*. Indeed, Orascom itself helpfully admits that in *Kingsepp*, 763 F. Supp. at 27, the court found Dartmouth's New York bond issues to be a "plus" factor. (Orascom memo at 8).

Thus, as Orascom itself concedes, the existence of Orascom's New York bond program, particularly when coupled with the existence of its New York GDR program, easily meets the "plus" prong of the jurisdictional inquiry here.[4]

Second, Orascom's claim that the contract with Warner Music "does not involve Orascom" (p. 15) is a bold-faced fabrication.[5] Warner itself termed the contract "a strategic partnership" pursuant to which Warner "will work with" Orascom "to deliver music-based content and services to consumers in a variety of innovative ways." Ex. 46.

Thus, the Warner contract is clearly another Orascom New York contact, and so constitutes another "plus" factor.

Orascom also argues that a contract of this type standing alone cannot confer jurisdiction. *Id*. Maybe so, but that is not the point, since "[u]nder th[e] 'solicitation-plus' rule, once solicitation is found in any substantial degree *very little more* is necessary to a conclusion of 'doing business.'" *Allojet PLC v. Vantgage Associates*, 2005 WL 612848 *6 (S.D.N.Y. 2005) (internal quotes omitted) (emphasis added).[6]

Third, the jurisdictional significance of Mr. Sawiris' *ex officio* New York stock exchange committee membership is not limited to attendance at a "single" annual meeting, as Orascom wishfully frames the issue. (Orascom Memo at 13). Rather, as the Ungars showed in their Memo, Mr.

---

[4] Again, we treat the solicitation to invest in Orascom's stocks, GDRs and bond as "solicitation," irrespective of where those stocks, bonds and GDRs are located, and the existence and maintenance of the GDR and bond programs in New York as "plus" factors.

[5] Similarly, Orascom's claim (p. 19) that "many other[]" courts have found the Ungars' jurisdictional allegations insufficient is total fiction. Except for this Court's November 2005 decision, no court has ruled on this issue.

[6] Indeed, throughout its papers, Orascom consistently ignores the rule that jurisdictional analysis must look to the aggregate of contacts, and instead cites to cases holding this or that specific contact insufficient standing alone to create jurisdiction. That is not a particularly difficult task, since there is virtually no single contact, which, standing alone, gives rise to jurisdiction. Unfortunately for Orascom, this method of analysis is defective and proves nothing at all. "There is no talismanic significance to any one contact or set of contacts that a defendant may have with a forum state; courts should assess the defendant's contacts as a whole." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 570 (2d Cir. 1996) (emphasis added).

Sawiris' participation in the committee is continuous and ongoing, and has involved several meetings in New York. (*Id.* at 23). Since Orascom derives prestige and goodwill in the marketplace from this membership and publicly boasts about it, *id.*, it counts as a jurisdictional "plus" contact. *M'Baye v. World Boxing Ass'n*, 429 F.Supp.2d 652, 658 (S.D.N.Y. 2006) (New York activity through which defendant "gained prestige" is jurisdictionally significant).

Fourth, Orascom's argument that its repeated appointment of New York agents of process and submission to New York law are not, standing alone, enough to create jurisdiction (p. 15) is a *non sequitur*. The question is not whether these actions are enough, but rather whether they count for something, and can be considered a "plus" factor. Clearly, they do and can. *See e.g. Omni Consulting Group, Inc. v. Marina Consulting, Inc.*, 2004 WL 1946456 at *5 (W.D.N.Y. 2004) (fact that defendant was involved in prior New York suit is jurisdictionally significant).

In sum, the Ungars have shown the existence of "plus" factors, if not *prima facie* then at least very colorably, and jurisdictional discovery should be ordered.

## III.

### ORASCOM'S WITNESSES WITHHELD INFORMATION

The Ungars demonstrated that Orascom's officers were evasive, and in the case of Mr. El Gammal clearly untruthful. (Plaintiffs' Memo at 26-27). In reply, Orascom offers nothing but lawyerly platitudes and does not even attempt to explain this conduct. (Orascom Memo at 19).

The Court should therefore deem this point—which standing alone is grounds to order jurisdictional discovery—as conceded by Orascom.

## IV.

### CONCLUSION

If the Court determines that the plaintiffs have not made a *prima facie* jurisdictional showing, then plaintiffs' cross-motion for jurisdictional discovery should be granted

Respectfully submitted,

**JAROSLAWICZ & JAROS, LLC**
*Attorneys for the plaintiffs*

by:   s/ *Robert J. Tolchin*
       Robert J. Tolchin

225 Broadway, 24th floor
New York, New York 10007
(212) 227-2780

**MCINTYRE, TATE, LYNCH & HOLT**
*Attorneys for the plaintiffs*
321 South Main Street, Suite 400
Providence, Rhode Island 02903
(401) 351-7700

-14-